## OPINION OF THE JUSTICES TO THE HOUSE OF REPRESENTATIVES.

*Housing. Old Age Assistance. Public Welfare. Constitutional Law,* Housing, Public welfare, Eminent domain, Giving or lending the credit of the Commonwealth, Public purpose. *Eminent Domain,* Purpose of taking.

Providing through housing authorities of suitable housing to persons at least sixty-five years of age not having sufficient income "to enable them to maintain decent, safe and sanitary housing," even though not involving elimination of slums or of unsafe or unsanitary dwellings, would be directed to the relief of a class of needy persons and would be for a public purpose, so that it would be constitutional to authorize the taking of land by eminent domain by the housing authorities for such purpose and the furnishing of financial assistance by the Commonwealth to the housing authorities therefor.

On May 27, 1954, the Justices submitted the following answers to questions propounded to them by the House of Representatives.

To the Honorable the House of Representatives of the Commonwealth of Massachusetts:

The Justices of the Supreme Judicial Court respectfully submit these answers to the questions set forth in an order adopted by the House of Representatives on May 18, 1954, and transmitted to the Justices on May 19.

The questions relate to a bill now pending before the House, entitled "An Act to provide for the housing of elderly persons of low income." The order adopted by the House contains recitals to the effect that there is not in certain parts of the Commonwealth an adequate supply of decent, safe, and sanitary housing for elderly persons of low income available for rents which such persons can afford to pay, and the rents which such persons can afford to pay would not warrant private enterprise in providing

such housing for such persons; that this situation tends
to cause an increase and spread of communicable and chronic
diseases and is detrimental to property values in the localities
in which it exists and constitutes a menace to the health,
safety, welfare, and comfort of the inhabitants of the Com-
monwealth; that a public exigency exists which makes the
provision of housing for elderly persons of low income a
public necessity; that this situation can be relieved only
by construction of such housing by a housing authority
under a contract for financial assistance, entered into
between such authority and the Commonwealth, and by
authorizing such authorities to take land by eminent do-
main; and that the pending bill incorporates by reference
the provisions of § 26GG of c. 121 of the General Laws.
See G. L. (Ter. Ed.) c. 121, § 26GG, as appearing in St.
1949, c. 760, § 4.

The pending bill amends that part of the housing au-
thority law contained in c. 121 of the Tercentenary Edition
of the General Laws and appearing under the caption
"Part VII" in St. 1953, c. 668, § 1. It provides that the
housing authority of each city or town shall have power to
provide housing for elderly persons of low income either in
separate projects or in projects undertaken under Part III
or Part V of the chapter, or in remodeled or reconstructed
existing buildings, and that the provisions of Parts I, II,
III, and V of the chapter shall, so far as apt, be applicable
to projects and parts of projects undertaken under Part
VII, except as otherwise provided in the chapter. It is
further provided that housing for elderly persons of low
income shall be designed so as to alleviate the infirmities
characteristic of the elderly. The bill amends § 26NN so
as to provide that a housing authority may remodel or
reconstruct parts or projects erected under that section to
make the same available for occupancy by elderly persons
qualifying for housing under the proposed bill. The term
"elderly persons of low income" is defined by existing law
as meaning "persons having reached the age of sixty-five or
over whose annual net income is less than the amount

necessary to enable them to maintain decent, safe and sanitary housing." § 26J as amended by St. 1953, c. 668, § 3.

The pending bill also contains provisions relative to financing to the effect that the Commonwealth, acting through the State housing board, may contract with a housing authority for State financial assistance in the form of a guaranty by the Commonwealth of housing authority bonds or notes issued to finance the cost of projects, and of annual contributions by the Commonwealth to the authority.

The questions are as follows:

"1. Does it lie within the power of the General Court to authorize housing authorities to take land by eminent domain for the purpose of providing housing for elderly persons of low income under the conditions above set forth: —

"(a) Under the power to make all manner of reasonable and wholesome laws under Part II, Chapter I, Section I, Article IV of the Constitution of the Commonwealth;

"(b) Under the provisions of Part I, Article X empowering the legislature to authorize the taking of land by eminent domain for a public purpose;

"(c) Under Article XLIII of the Articles of Amendment authorizing the Commonwealth to take land and to hold, improve, subdivide, build upon and sell the same for the purpose of relieving congestion of population and providing homes for citizens?

"2. Is it within the power of the General Court to provide that the Commonwealth, acting by and through the State Housing Board, may enter into a contract or contracts with an housing authority for state financial assistance in the form of guarantees by the Commonwealth of notes and/or bonds of the housing authority issued to finance the cost of an housing project or projects, and annual contributions by the Commonwealth, the said projects to be rented to elderly persons of low income, as authorized by sections 26SS, 26TT, 26UU, 26VV of chap-

ter 121 of the General Laws, if enacted as provided in sections 1 and 2 of House, No. 2775?

"3. Is it within the power of the General Court under Part II, Chapter I, Section I, Article IV; Part I, Article X; and Article XLIII of the Articles of Amendment of the Constitution of the Commonwealth or any other provision of the Constitution, to authorize the Commonwealth to guarantee notes and/or bonds of an housing authority issued to finance the cost of housing projects for elderly persons of low income and to make annual contributions to be used for the payment of interest on, and principal of notes and/or bonds of such housing authority in order to reduce the rent otherwise required, substantially as provided in said sections 26SS, 26TT, 26UU, 26VV, if enacted as provided in sections 1 and 2 of said House, No. 2775?"

The findings of the House contained in the order are entitled to weight, since they are set forth as "the conditions" upon which question 1 is predicated. See *Lowell* v. *Boston*, 322 Mass. 709, 735.

In the case of *Allydonn Realty Corp.* v. *Holyoke Housing Authority*, 304 Mass. 288, this court decided that the housing authority law as then appearing in G. L. (Ter. Ed.) c. 121, §§ 26I to 26II, inserted by St. 1938, c. 484, § 1, was constitutional. That decision rested upon the double aspect of the statute as providing for slum clearance and for the elimination of unsafe or unsanitary buildings as well as for low rent housing, and upon the belief that, in view of the legislative findings contained in that statute, slum clearance and the elimination of unsafe and unsanitary dwellings were public purposes for which public money could be expended, and that the provisions for low rent housing complemented the other provisions and did not render the statute unconstitutional.

The proposed bill in the present instance is in many respects similar to the statute passed upon in the *Allydonn* case. It incorporates by reference, "so [far?] as apt,"

§ 26GG, which in its present form, as appearing in St. 1949, c. 760, § 4, although somewhat weakened by amendments subsequent to its appearance as § 26CC in the statute of 1938, still provides in general terms for the elimination of "unsafe or unsanitary dwelling units situated in the locality or metropolitan area substantially equal in numbers to the number of newly constructed dwelling units provided by such project." But § 26GG does not fully cover the activities contemplated by the pending bill. The pending bill in its § 26TT expressly says that projects to provide housing for elderly persons of low income may be undertaken "in remodeled or reconstructed existing buildings." Section 26GG by its express terms applies only to projects "involving the construction of new dwellings." That section therefore would not be "apt" with reference to a project that involved no new construction. So far as we can see, if the proposed bill is enacted, it might be possible for a housing authority to take over a large existing hotel as a housing project for elderly persons of low income without ever eliminating any slums or any unsafe or unsanitary dwellings. Moreover, § 2 of the pending bill provides for so amending the present § 26NN as to permit a housing authority to remodel or reconstruct for occupancy by elderly persons of low income projects or parts of projects originally erected for the benefit of veterans under that section. In this instance also there would be no elimination of slums or of unsafe or unsanitary dwellings.

For the reasons just stated the *Allydonn* case is not fully decisive of the questions here presented, and it becomes necessary to consider whether the provisions of the proposed bill for the benefit of elderly persons of low income are constitutional and valid apart from any elimination of slums or of unsafe and unsanitary dwellings. We are of opinion that they are.

These provisions differ in important respects from those of the statute of 1938 which caused us in the *Allydonn* case to intimate some doubt (although we did not decide the point) as to whether the provisions for low rent housing

would be constitutional if severed from the provisions for the elimination of slums and of unsafe and unsanitary dwellings. See 304 Mass. at page 295. The provisions for low rent housing in the 1938 statute were directed to the supplying of a type of housing of which it was declared that an adequate supply was lacking and could not readily be furnished through private enterprise. The requirements of that statute related to the qualification of the projects rather than of the individuals who should occupy them. It was intended that the *housing* produced under that statute should be such as to be within the reach of families in the lowest income group who could not afford to pay enough to cause private enterprise to build an adequate supply of decent, safe, and sanitary dwellings. See the definitions in § 26J as appearing in St. 1938, c. 484, § 1. No doubt it was expected that the projects would be occupied by families of that type, but there was no express requirement as to the needs of any family as a condition of occupancy, the only express requirements being that the rentals should be "within the financial reach of laborers and wage earners of low income," and that the aggregate annual income of a family should not exceed five (or in some cases six) times the annual rental. § 26AA (a), (c), as appearing in said § 1. There was no requirement as a condition of occupancy that any family be in actual need of relief at public expense, and the *Allydonn* case was decided, as appears from the opinion, on that premise.

The pending bill is different. It does away entirely with the requirement that occupants constitute families. Proposed § 26UU (a). It deals with individuals as such. It is made clear that occupants must be elderly persons of low income. Proposed §§ 26TT and 26UU, particularly clause (d). And elderly persons of low income are persons sixty-five years of age or over "whose annual net income is less than the amount necessary to enable them to maintain decent, safe and sanitary housing." It would seem that persons who are presently unable to maintain for themselves housing that is at least decent, safe, and sanitary, and

who are not less than sixty-five years of age, may be determined by the Legislature to be in present need of relief, and that relief may be furnished to such persons at public expense on the same principle on which any person presently in want of the necessities of life may be relieved at public expense. An analogue to the pending bill may be found in c. 118A relating to assistance to aged citizens. See *Leigh* v. *Commissioner of Public Health & Charities of Lawrence*, 310 Mass. 343. It is for the Legislature to determine within reason the amount of relief and the manner in which it is to be granted, whether by money, in an almshouse, or in a housing project for elderly persons of low income. In short, we are of opinion that the pending bill is in substance a bill for the relief of a class of needy persons, and we think this is true even though not all persons who may be eligible are immediately entitled to demand aid as a matter of right. A beginning may be made where the need is greatest and the conditions most favorable. The classification of persons eligible is reasonable and nondiscriminatory. Throughout the history of the Commonwealth the relief of the poor has been considered a matter for legislative attention. *Goshen* v. *Richmond*, 4 Allen, 458, 461. *Cambridge* v. *Boston*, 130 Mass. 357. *Bradford* v. *Worcester*, 184 Mass. 557, 561. *Attorney General* v. *Board of Public Welfare of Northampton*, 313 Mass. 675, 680–682.

It is undoubtedly the law that private property cannot be taken by eminent domain or paid for by public money merely for the purpose of disposing of it to or for the benefit of private individuals. *McLean* v. *Boston*, 327 Mass. 118, 121. But underlying the pending bill and supporting its provisions is the public purpose of relief to a class of aged, needy, and indigent persons.

Since the object of the pending bill is a public object, the provisions relative to financial assistance by the State to housing authorities are also valid. These provisions are substantially the same as those that were deemed to be valid in *Opinion of the Justices*, 322 Mass. 745, 750–754. We need not repeat the reasoning of that opinion.

To question 1 we answer "Yes, under Part II, Chapter 1, Section 1, Article IV of the Constitution." No further answer to this question seems necessary.

To question 2 we answer "Yes."

To question 3 we answer "Yes."

> STANLEY E. QUA.
> HENRY T. LUMMUS.
> JAMES J. RONAN.
> RAYMOND S. WILKINS.
> JOHN V. SPALDING.
> HAROLD P. WILLIAMS.
> EDWARD A. COUNIHAN, Jr.