## Vermont Home Mortgage Credit Agency v. Montpelier National Bank

[262 A.2d 445]

No. 131-69

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed January 15, 1970

*James L. Oakes,* Brattleboro, for Plaintiff.

*Paterson, Gibson, Noble & Brownell,* Montpelier, for Defendant.

**Holden, C.J.** The defendant agreed to buy five notes to be issued by the plaintiff in the amount of $10,000 each, bearing annual interest at the rate of five and one-half percent. The plaintiff Agency is an instrumentality of the State of Vermont which is established and derives its authority from Chapter 11B of the Vermont Statutes Annotated. 1967 (Adj. Sess.) No. 282, effective March 14, 1968. The defendant is a national bank, doing business in Montpelier.

The obligations of the plaintiff to sell, and the defendant to purchase the notes are subject to the provision specified in the contract—"(t)hat such Notes, when issued, shall be valid obligations of the Agency duly and constitutionally authorized by Chapter 11B of Title 10, Vermont Statutes Annotated."

When the plaintiff called upon the defendant to fulfill its commitment to purchase, the defendant declined, citing the opinion of its counsel that the notes will not be constitutionally authorized obligations of the Agency. The present proceedings in equity for a declaratory decree were instituted to determine the rights of the parties under their contract. The defendant admitted the principal facts, except its default, whereupon the plaintiff moved for judgment on the pleadings. Before entering judgment for the plaintiff, the chancellor certified two questions to this Court.

First, does the enactment serve a private rather than a public purpose?

■ Our state constitution establishes that—"no part of any person's property can be justly taken from him, or applied to public uses, without his own consent, or that of the Representative Body of the freemen,—and previous to any law being made to raise a tax, the purpose for which it is to be raised ought to appear evident to the Legislature to be of more service to community than the money would be if not collected." Vt. Const. Ch. I, Art. 9. Thus the power of the Legislature to raise and appropriate public funds is limited to public uses. In searching that question, if the general public benefit is the dominant interest served, the restraint of the constitution is not exceeded even though the administration of the act confers a benefit on private institutions or persons. *Vermont Educational Buildings Financing Agency* v. *Mann,* 127 Vt. 262, 266, 247 A.2d 68, *Gross* v. *Gates,* 109 Vt. 156, 165, 194 A. 465; *City of Burlington* v. *Central Vermont Railway Co.,* 82 Vt. 5, 10, 71 A. 721.

The avowed objective of the legislation in question is stated in its opening sections:

*Sec. 1.* Purpose

The purpose of this act [chapter] is to create a Vermont Home Mortgage Credit Agency as a body corporate and politic with power to acquire from banks and savings and loan associations within the state first mortgage loans on dwelling house properties within the state and exercise all the rights and powers of a first mortgagee, including the power to sell, convey or otherwise dispose of any real or personal property acquired or owned by it; to guarantee to the extent herein provided the repayment of certain loans secured by home mortgages; and to authorize the issuance of bonds or notes of the agency and to provide that the full faith and credit of the state of Vermont be pledged to the payment of those obligations.

*Sec. 2.* Findings

It is hereby found and determined that the creation of the agency and the carrying out of its purposes is in all respects for the benefit of the people of the state of Vermont in furtherance of their health, safety, welfare and

prosperity, and is a public purpose, and that the agency will be performing an essential governmental function in the exercise of the powers conferred upon it by this act. It is specifically found and determined that this act is necessary to assure an adequate supply of capital to provide safe, adequate and sufficient housing for the state's growing population, as well as to promote the intent, purpose and public policy expressed in 10 V.S.A. chapters 11 (Vermont Industrial Building Authority Act) and 11a (Vermont Industrial Park Authority Act). 1967, No. 282 (Adj. Sess.) §§ 1 and 2; 10 V.S.A. § 241 and Revision Note.

The provisions of the enactment which follow create the Vermont Home Mortgage Credit Agency and define its authority as a corporate entity and public instrumentality of the state. The agency is composed of the state treasurer, the commissioner of administration and the commissioner of banking and insurance. It has the capability to sue and be sued, acquire, hold and convey real estate. It is authorized to make bylaws for the management and regulations of its affairs, appoint officers, agents and employees and specify their responsibilities. It may enter contractual obligations and execute all instruments necessary and convenient to fulfill its corporate responsibilities.

To finance home ownership, the agency is authorized to purchase from banks and savings and loan associations, lawfully doing business in Vermont, interest bearing obligations secured by first mortgages on one and two family dwelling house units at interest rates not to exceed the lawful rates established under the banking law. 10 V.S.A. §§ 242–242a. The agency also is authorized to issue negotiable notes and bonds to provide resources for the purchase of mortgage obligations. The plaintiff may also commit itself to certificates of guaranty. 10 V.S.A. §§ 244, 244a, 245 and 247.

By the terms of the enactment, lending agencies may make loans on the security of real estate first mortgages in excess of 80% of the appraised value, provided the principal amount of the loan does not exceed the appraised value, or $20,000 in any event. 10 V.S.A. § 247. The full faith and credit of the state is pledged to the bonds and in support of the guaranties extended by the agency. 10 V.S.A. §§ 246 and 247. The aggre-

gate liability of the agency is limited to one million dollars. 10 V.S.A. § 250a. The agency cannot at any time hold purchase loans in excess of ten million dollars. 10 V.S.A. § 246a.

■ The declaration of purpose puts the statute in the domain of the police power. Each statute which traverses the area must be measured in the context of the facts upon which it is brought to bear to determine whether the power it conveys is addressed to a legitimate governmental objective. As for the purpose of the act and the legislative intent, we must take the lawmakers at their word, as stated in the statute. *Berman* v. *Parker,* 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27, 37. And what is a public purpose within Article 9 of our Bill of Rights—"is a question for the Legislature to decide, and concerning which it has a large discretion, which the courts can control only, if at all, in very exceptional cases." *Rowell, C.J.,* in *City of Burlington* v. *Central Vermont Railway Co., supra,* 82 Vt. at 10, 71 A. 826. And while the legislative declarations and findings are subject to judicial review, they are of controlling importance unless it can clearly be seen that a law purporting to protect the public welfare bears no rational relation to that purpose. See *State* v. *Auclair,* 110 Vt. 147, 159, 4 A.2d 107.

■ The participation of government in projects designed to improve housing conditions has long been recognized as a proper objective of the police power. Expenditure of public funds and the extension of the credit of the sovereign to municipal agencies and private individuals to meet the increasing demand for housing units have been generally confirmed against constitutional challenge in both federal and state jurisdictions. *City of Cleveland* v. *United States,* 323 U.S. 329, 65 S.Ct. 280, 89 L.Ed. 274, 279; *New York City Housing Authority* v. *Muller,* 270, N.Y. 333, 1 N.E.2d 153, 105 A.L.R. 905, 909; *Opinion of the Justices,* 331 Mass. 771, 120 N.E.2d 198, 202; *Velishka* v. *Nashua,* 99 N.H. 161, 106 A.2d 571, 44 A.L.R. 2d 1406, 1413 and annotation at 1416. See also, 172 A.L.R. 966, 130 A.L.R. 1069; *In re Advisory Opinion,* 380 Mich. 554, 158 N.W.2d 416, 424.

Notwithstanding a prior advisory opinion to the contrary, (*Opinion of the Justices,* 351 Mass. 716, 219 N.E.2d 18, 26), the Supreme Judicial Court sustained the validity of a Massa-

chusetts enactment, similar in design and purpose to our statute. The constitutional issues were litigated, as here, by lending institutions against their contractual commitments. The Court held that the primary purpose of the act was to provide proper housing for families of low income. In reaching this result, it determined that "any benefits to persons of moderate income is only incidental to the primary objective, although contributing to its achievement." *Massachusetts Housing Finance Agency* v. *New England Merchants National Bank of Boston* (June 11, 1969) 249 N.E.2d 599, 606.

The defendant contends that the aid available to middle income families is not incidental, but a part of the main purpose of the Vermont act. It suggests the distinction, in not relating specifically to low income needs and slum clearance projects, constitutes a service to private, rather than public needs.

An argument of the same tenor was urged upon the Court in an attack upon the constitutionality of an act of the Legislature in 1867 which authorized the towns of Bennington and Rutland counties to acquire bonds of the Lebanon Springs Railroad Company to advance communication by railroad for the towns concerned. It was said—"that the aid authorized by the act in question enures to the benefit of a private corporation, and therefore the taxation proposed is for a private purpose. This objective might be raised to almost every species of taxation that is warranted by law; some private individual or corporation reaps a special benefit; but if a general public benefit is accomplished, the money appropriated is made of 'more service to the community than it would be if not collected.'" *Town of Bennington* v. *Park,* 50 Vt. 178, 194. Accord, *Vermont Educational Buildings Financing Agency* v. *Mann, supra,* 127 Vt. at 266, 247 A.2d 68; *City of Burlington* v. *Central Vermont Railway Co., supra,* 82 Vt. at 9, 71 A. 826.

The public benefit sought to be served by the 1867 statute was the growth and development of industrial pursuits as related to the economic prosperity of the people in the towns involved. The Home Mortgage Credit Act concerns a similar objective for the State. The legislative findings refer to the public purpose and policy of stimulating industrial growth, utilizing commercial potential and expanding employment opportunity as expressed in Chapters 11 and 11A. The public necessity for safe, adequate and sufficient housing goes hand in

hand with the need created by the State's growing population and industrial development. And as a matter of general notice, we recognize that rising costs of money, here and elsewhere, have placed capital funds for home construction in critically short supply. See Klaman, Public/Private Approaches to Urban Mortgage and Housing Problems, 32 Law and Contemporary Problems, 254.

We are not called upon to pass judgment on whether the means adopted by the Legislature represent sound economic and governmental policy. Those considerations reside in the area of legislative responsibility.

The Court's concern is whether the fulfillment of statutory purpose, as defined in the enactment, will confer a general public benefit on the State at large. And it is not questioned in this appeal, that if the measures adopted by the General Assembly succeed in their objective to provide safe, adequate and sufficient housing, the general welfare of the State will be served.

Accordingly, we hold the Vermont Home Mortgage Credit Agency Act is designed to serve a proper governmental purpose within the requirement of Article 9, Chapter I of the Vermont Constitution. The answer to the first question is in the affirmative.

The remaining question is presented by the defendant's contention that the act constitutes an unlawful delegation of legislative power to the Agency. To withstand the charge of unconstitutional delegation of legislative power, the statute must establish reasonable standards to govern the achievement of its purpose and the execution of the power which it confers. *State* v. *Auclair, supra,* 110 Vt. at 163, 4 A.2d 107; *Village of Waterbury* v. *Melendy,* 109 Vt. 441, 449, 199 A. 236; *Sabre* v. *Rutland Railroad Co.,* 86 Vt. 347, 362, 85 A. 693. Within these limits, the General Assembly may confide a broad grant of authority to a subordinate agency in intricate matters affecting the general welfare in natural resources, health, education and economics. *State* v. *Auclair, supra,* 110 Vt. at 163, 4 A.2d 107; *Vermont Woolen Corp.* v. *Wackerman,* 122 Vt. 219, 224, 167 A.2d 533. This is especially pertinent in areas of the police power, where contracts with the govern-

ment are involved. *Dresden School District* v. *Norwich Town School District*, 124 Vt. 227, 232, 203 A.2d 598.

■ The enactment which created the plaintiff agency and authorized its function as an instrumentality of the State provides basic standards against arbitrary and capricious administration.

The governing board is composed of state officials designated by the statute. 10 V.S.A. § 241a. Its powers are clearly defined, § 242. The agency's authority is specifically limited as to transactions in which it can engage in the purchase of loans, the issuance of bonds and the use of their proceeds; and in the application of payments received on mortgage indebtedness. 10 V.S.A. §§ 242a–246a.

The authority of the agency to enter and perform guaranty obligations is designated by the act. 10 V.S.A. §§ 247–250a. The maximum amount of individual loans and the nature of the security are specifically limited. As we have seen, *supra*, the agency's aggregate holdings and guaranty liability are expressly restricted. There are other safeguards designed to preserve the integrity of agency funds and assure prudent administration of the act. 10 V.S.A. §§ 251a–253a.

By section 251, the agency is granted authority to make such rules and regulations as it considers necessary and convenient to carry out the general purposes of the act. However, the authority, thus conferred, is not unbridled. Subsections (a) through (e) designate, define and restrict the areas of administrative regulation.

This section does not empower the plaintiff to act in the capacity of lawmaker, as in *Village of Waterbury* v. *Melendy, supra*, 109 Vt. at 452, 199 A. 236. It merely confides a discretionary authority to implement the statutory directive within the boundaries fixed by the enactment. This function is necessary and proper to achieve a valid governmental objective in details with which the Legislature cannot directly deal. Such authority is properly delegated within the plan of government expressed in Chapter II, § 2 of the Vermont Constitution. *Vermont Educational Buildings Financing Agency* v. *Mann, supra*, 127 Vt. at 267, 247 A.2d 68; *State* v. *Auclair, supra*, 110 Vt. at 163, 4 A.2d 107; *Elliott* v. *Vermont State Fish and Game Commission*, 117 Vt. 61, 69, 84 A.2d 588.

For the reasons stated, we conclude that the Vermont Home Mortgage Credit Agency Act does not transfer powers reserved to the General Assembly. The second question presented is answered in the negative.

The notes which the defendant agreed to purchase from the plaintiff are "constitutionally authorized" within the language of their contract. Since the cause has been determined on the pleadings, we will enter final judgment here as provided in 12 V.S.A. § 2386. *Joy* v. *Swanton Savings Bank & Trust Co.*, 111 Vt. 106, 111, 10 A.2d 216.

*Let a decree for the plaintiff issue in accordance with the law declared in the opinion of the Court.*