## Johnson *v.* Pennsylvania Housing Finance Agency et al., Appellants.

Argued May 3, 1973. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY and MANDERINO, JJ.

*Jerome J. Shestack,* with him *Thomas R. Schmuhl,* and *Schnader, Harrison, Segal & Lewis,* for appellants.

*Mitchell S. Lipschutz,* for appellee.

*Justin J. Blewitt, Jr.,* Deputy Attorney General, *Peter W. Brown,* First Deputy Attorney General, and *Israel Packel,* Attorney General, for amicus curiae, Commonwealth of Pennsylvania.

OPINION BY MR. JUSTICE ROBERTS, September 19, 1973:

This is a taxpayer's suit in equity, challenging the constitutionality of the recently enacted Housing Finance Agency Law, Act of December 5, 1972, P. L. 1259, §§1 et seq., 35 P.S. §§1680.101 et seq. (Supp. 1973). This Court has assumed plenary jurisdiction.[1] Given the innovativeness of the undertaking authorized by the

---

[1] Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P. L. 673, No. 223, art. II, §205, 17 P.S. §211.205 (Supp. 1973). The

Housing Finance Agency Law, "[i]t [has] naturally invite[d] . . . the attack of those who are inclined to regard all experiments in our social and economic life as presumptively unconstitutional." *Dornan v. Philadelphia Housing Authority,* 331 Pa. 209, 213, 200 Atl. 834, 836 (1938).

Appellee, plaintiff below, has presented to this Court a veritable barrage of constitutional arguments apparently "in the hope that a stray shot may find its way to some vital target." *Belovsky v. Redevelopment Authority,* 357 Pa. 329, 341, 54 A. 2d 277, 283 (1947). However, our determination of the merits of appellee's contentions leaves the Housing Finance Agency Law unscathed; it is undoubtedly constitutional in all respects.

Specifically, appellee argues that the Housing Finance Agency Law (hereinafter "H.F.A.L.") is unconstitutional in that it (1) does not serve a public purpose; (2) contravenes the constitutional prohibition against delegation of legislative power; (3) authorizes a debt or pledge of credit by the Commonwealth; (4) constitutes an irrevocable grant of special privileges and immunities; (5) provides for a prohibited exemption from taxation; (6) creates a special or local law; and (7) fails, in its title, to state the full subject of the Law. As noted above, all of these contentions are without legal substance.

The legislative findings[2] make clear that the H.F.A.L. stems from and is mandated by the critical

---

petition to assume plenary jurisdiction was filed by appellants, defendants below, on March 28, 1973, and joined in by the Commonwealth, as amicus curiae, on April 11, 1973. In view of the issues of immediate public importance posed by the instant action, the petition was granted on April 16, 1973. (The Commonwealth filed its brief, in support of the constitutionality and validity of the H.F.A.L., in this Court on July 19, 1973.)

[2] "It is hereby determined and declared as a matter of legislative finding that—

housing shortage presently existing throughout the
Commonwealth with respect to low income, moderate

"(1) The welfare of the Commonwealth is threatened by the fact that throughout Pennsylvania the supply of private homes and rental units for persons and families of low and moderate income is inadequate to meet the need for such housing created by an expanding population, the wearing out of older dwellings and the elimination of substandard dwellings by governmental action, and by a shortage of suitable dwellings for elderly persons.

"(2) Because of higher construction costs, a scarcity of financing available for housing and the resulting increase in interest rates, the housing need which exists in fact has not been able to find economic expression in a market demand sufficient to encourage greater production of homes and rental housing by private industry for persons and families of low and moderate income, including the elderly.

"(3) Persons and families whose residences are condemned by governmental action in the prosecution of necessary public works in urban slum clearance programs and under regulatory laws protecting health and safety, face insuperable difficulties in finding new housing which is adequate, safe and sanitary. Many such persons and families are not eligible to occupy public housing administered by governmental agencies and are also unable to rent or purchase adequate, safe and sanitary housing because of the economic conditions described. Unless it becomes economically feasible for these persons and families to acquire housing in place of the dwellings now being eliminated by urban renewal programs in blighted areas and other dwellings removed by reason of other public works, such necessary governmental activities face serious curtailment or interruption.

"(4) The Commonwealth has a strong moral responsibility to assist in providing opportunity for the rental or purchase of relocation housing by persons and families who are displaced by necessary governmental action, as well as a general and continuing responsibility to eliminate conditions which prevent private industry from supplying housing to relieve the general shortage of housing.

"(5) Private industry alone has been and now is unable to provide the financing necessary, at a cost which persons and families of low and moderate income can afford, for housing for such persons and families and therefore, the specialized financing provided for in this act will encourage greater expenditure of private capital for housing.

income, and elderly persons and familiies.[3] H.F.A.L., 35 P.S. §1680.102 (Supp. 1973). See also *Reitmeyer v. Sprecher*, 431 Pa. 284, 290, 243 A. 2d 395, 398 (1968). In response to this problem of critical state concern, and in the hope of alleviating it, the Legislature has established the Pennsylvania Housing Finance Agency (H.F.A.L., 35 P.S. §1680.201 (Supp. 1973)) as a "public corporation and government instrumentality," with express powers to administer two basic programs in-

"(6) The relationship of a sufficient provision of adequate, safe and sanitary housing to the advancement of the public health and morals and to the prevention of fire, accident and crime is clear.

"(7) Therefore, it is hereby declared to be the policy of the Commonwealth of Pennsylvania to promote the health, safety and welfare of its inhabitants by the creation of a body corporate and politic, to be known as the 'Pennsylvania Housing Finance Agency,' which shall exist and operate for the purposes of alleviating the hardship which results from insufficient production of private homes and of rental housing for persons and families of low and moderate income, including the elderly, the hardship resulting from the relocation of persons displaced by governmental action, the deleterious effect of inadequate housing upon the general welfare of the Commonwealth, and the disadvantages, resulting from economic conditions, which bar private industry from satisfying a vital need, by broadening the market for private homes and for housing for persons and families of low and moderate income, including the elderly, through the provision of specialized financing secured by mortgages to corporations, individuals, joint ventures, partnerships, limited partnerships, trusts, cooperatives and condominiums, which are unable to obtain such financing in the general market or who are unable to participate in specialized Federal housing programs because of lack of available Federal funds, and through cooperation with and assistance to the Pennsylvania Department of Community Affairs as such department carries into effect the powers and duties vested in it, thus improving and stimulating the distribution of investment capital for housing. Such purposes are public purposes for which public money may be spent." H.F.A.L., Act of December 5, 1972, P. L. 1259, §102, 35 P.S. §1680.102 (Supp. 1973).

[3] We note in passing, as appellants point out in their brief, that this shortage has been severely exacerbated by the cessation of many federally funded housing programs and by the devastation caused by tropical storm Agnes in June of 1972.

volving housing purchases (H.F.A.L., 35 P.S. §1680.
301a (Supp. 1973)) and housing rentals (H.F.A.L., 35
P.S. §1680.401a-404a (Supp. 1973)).

Under the housing purchase program, the Hous-
ing Finance Agency is authorized to lend funds to any
mortgagor for the "construction, reconstruction or re-
habilitation of housing units for sale to individual pur-
chasers of low or moderate income . . . ." H.F.A.L.,
35 P.S. §1680.301a(a) (Supp. 1973). All sales are to
be supervised by the Agency. Once a unit is sold to
a purchaser of low or moderate income, the original
mortgagor's obligation to the Agency is released, and
the new purchaser assumes his own mortgage obliga-
tion to the Agency. Under this phase of the program,
the Agency is additionally empowered to issue loans
directly to individuals of low or moderate income for
the purchase of housing units. H.F.A.L., 35 P.S.
§1680.301a(e) (Supp. 1973).

The rental program (H.F.A.L., 35 P.S. §1680.401a-
404a (Supp. 1973)) authorizes the Agency to ". . .
make mortgage loans to mortgagors for such projects
as in the judgment of the Agency have promise of
supplying well-planned, well designed apartment units
which will provide housing for low and moderate in-
come persons . . . ." H.F.A.L., 35 P.S. §1680.402a
(Supp. 1973). All loans granted by the Agency subject
the mortgagor to regulation and limitation of rents
charged, and permissible profits earned.

In order to finance the above programs, the General
Assembly has empowered the Agency to issue bonds and
notes, which are to be payable out of the Agency's reve-
nue, including the proceeds of its mortgage loans.
H.F.A.L., 35 P.S. §1680.501a (Supp. 1973). As the
H.F.A.L. declares, the notes and bonds issued by the
Agency do not constitute " a debt of the Common-
wealth or of any political subdivision thereof." and
". . . that neither the faith and credit nor the tax-

ing power . . . is pledged to the payment of the principal of or the interest on such bonds." H.F.A.L., at 35 P.S. §1680.502a (Supp. 1973). Furthermore, the Agency is required to establish and maintain a "Capital Reserve Fund" in an amount equal to the entire principal and interest due on its outstanding bonds and notes during the succeeding calendar year. H.F.A.L., 35 P.S. §1680.504a (Supp. 1973).

If the Agency determines that there will be, in any year, a deficiency in the Capital Reserve Fund or a default in the payment of interest or principal, the Agency is required to submit to the Governor an estimate of the funds necessary to avoid such a deficiency or default. The Governor is then required to include this amount in the requested Commonwealth budget submitted to the Legislature; the Legislature, however, is not required to, but may, appropriate funds to avoid a deficiency or default. Id.

The H.F.A.L. further provides that all bonds and notes issued by the Agency are to be free from all taxes and assessments except inheritance, gift, estate, and transfer taxes. H.F.A.L., 35 P.S. §1680.506a (Supp. 1973). The Commonwealth also pledges and covenants not to impair the rights and remedies of holders of Agency obligations. H.F.A.L., 35 P.S. §1680.508a (Supp. 1973).

## I

Initially we note that statutes similar to the H.F.A.L. have been adopted by several states and have been upheld, without exception, when challenged on constitutional grounds closely akin to those presented here. See, e.g., *Massachusetts Housing Finance Agency v. New England Merchants National Bank*, 356 Mass. 202, 249 N.E. 2d 599 (1969); *Maine State Housing Authority v. Depositors Trust Co.*, 278 A. 2d 699 (Me. 1971); *Advisory Opinion on the Constitutionality of*

*Act No. 346,* 380 Mich. 554, 158 N.W. 2d 416 (1968) ; *New Jersey Mortgage Finance Agency v. McCrane,* 56 N.J. 414, 267 A. 2d 24 (1970) ; *Martin v. North Carolina Housing Corporation,* 277 N.C. 29, 175 S.E. 2d 665 (1970) ; *Vermont Home Mortgage Credit Agency v. Montpelier National Bank,* 128 Vt. 272, 262 A. 2d 445 (1970) ; *West Virginia Housing Development Fund v. Copenhaver,* 153 W. Va. 636, 171 S.E. 2d 545 (1969).

Plaintiff-appellee firstly contends that the H.F.A.L. is unconstitutional in that it does not involve a "public purpose" in which a public governmental body may engage. In direct contradiction to this argument, the Legislature has determined that the H.F.A.L.'s "purposes are public purposes for which public money may be spent." H.F.A.L., 35 P.S. §1680.102 (7) (Supp. 1973).

In determining the merits of plaintiff-appellee's contention, we are guided by the salutary rule that the legislative declaration, although not conclusive "is entitled to not only respect but to a prima facie acceptance of its correctness." *Dornan,* supra at 222, 200 Atl. at 841. Moreover, we note that "views as to what constitutes a public use necessarily vary with changing conceptions of the scope and functions of government, so that to-day there are familiar examples of such use which formerly would not have been so considered. As governmental activities increase with the growing complexity and integration of society, the concept of 'public use' naturally expands in proportion." Id. at 221, 200 Atl. at 840.

With these two concepts in mind, we are unable to conclude that the purpose of providing housing to individuals of low and moderate income is not one of a "public" nature, particularly in view of the acute housing shortage existing within the Commonwealth. See note 2, supra. The Legislature has acted quite prop-

erly in ascertaining the extent of the problem and in determining "the means necessary to combat that problem." *Basehore v. Hampden Industrial Development Authority*, 433 Pa. 40, 48-49, 248 A. 2d 212, 217 (1968). The need to deal effectively with the public challenge posed by the present lack of housing is of critical concern, and well within the ambit of lawful governmental authority. *Basehore* supra; *Dornan*, supra. Indeed, this Court has upheld programs far more expansive than the one instantly contested. See, e.g., *Basehore*, supra; *McSorley v. Fitzgerald*, 359 Pa. 264, 59 A. 2d 142 (1948); *Belovsky v. Redevelopment Authority*, 357 Pa. 329, 54 A. 2d 277 (1947); *Dornan*, supra.

As the New Jersey Supreme Court recently noted in sustaining a statute similar to the H.F.A.L. :

"[I]t is elementary that the very purpose of government is to provide for the health, safety and general welfare of the people. When a particular condition arises which poses a threat to the fulfillment of that function, the government has the power to take whatever steps are necessary to check the threat subject only to applicable constitutional limitations.

"The question of whether a citizenry had adequate and sufficient housing is certainly one of the prime considerations in assessing the general health and welfare of that body . . . . In the present case, the Legislature made a determination that there was 'a critical shortage of adequate housing,' that 'a large and significant number of . . . residents have and will be subject to hardship in finding adequate, safe and sanitary housing unless new facilities are constructed,' and that 'a major cause of this housing crisis is the lack of funds available to finance housing by the private mortgage lending institutions of the State.'" *New Jersey Mortgage Finance Agency v. McCrane*, supra, at 420-21, 267 A. 2d at 27 (citations omitted).

With these factors in mind, the New Jersey Supreme Court concluded that the New Jersey Mortgage Finance Agency Law, L. 1970, c. 38, N.J.S.A. 17:1B-4 et seq., undeniably fulfilled a "public purpose." Id. Our statute, based upon identical considerations as its New Jersey counterpart, and phrased in virtually identical language, is unquestionably designed to serve the same essential "public purpose."[4] *McSorley,* supra;

[4] Plaintiff-appellee's related contention that under the H.F.A.L. not all of the public will benefit and that some will receive greater benefits than others, thereby making the purpose of the law allegedly non-public, is also unconvincing.

"Thus the fact that the dwellings cannot and will not be occupied by all, but only by a few of the public having the prescribed qualification of poverty, is wholly lacking in legal significance, because the same may be said as to jails, poorhouses, and indeed many other institutions which are necessarily confined to a use, voluntary or involuntary, by certain selected portions of the population. An occupancy by some may promote, or even be vital to, the welfare of all. Nor is importance to be ascribed to the circumstance that some persons—the tenants—will from time to time receive more benefit from the use of the dwellings than the general public. The same observation would apply to hospitals and schools.

. . . .

"It is not essential that the entire community or even any considerable portion of it should directly enjoy or participate in an improvement in order to make its use a public one . . . ." *Dornan v. Philadelphia Housing Authority,* 331 Pa. 209, 221-22, 200 Atl. 834, 840 (1938).

Plaintiff's additional contention, that the H.F.A.L. performs a non-public use by embarking on a financing venture traditionally within the sphere of private enterprise, is also without merit. As this Court held in *McSorley v. Fitzgerald,* 359 Pa. 264, 270, 59 A. 2d 142, 145-46 (1948) : "It is no constitutional objection to the statute, nor does it derogate from the public character of its objective, that the Authority [Agency] will to some extent conduct what heretofore have been regarded as a private enterprise; to hold otherwise would mean that the State would be powerless, within constitutional limitations, to act in order to preserve the health and safety of its people even though such action were imperative and vital for the purpose."

*Basehore,* supra.   Plaintiff-appellee's initial argument, therefore, must be decided adversely to her.

## II

Plaintiff also maintains that the H.F.A.L. constitutes an improper delegation of legislative power in contravention of Article II, Section 1,[5] and Article III, Section 31[6] of the Pennsylvania Constitution.

Plaintiff's averment as to Article III, Section 31, is easily dismissed.   As previously noted, the Pennsylvania Housing Finance Agency is a "body corporate and politic . . . created as a public corporation and government instrumentality . . . ." H.F.A.L., 35 P.S. §1680.201 (Supp. 1973).   Accordingly, "it need hardly be . . . [stated] that the designed use of the words 'private corporation' [in Article III, Section 31] cannot include 'a public body corporate and politic . . .,' under the rule that the expression of one thing excludes what is not expressed . . . . As public corporations were excluded when corporations were spoken of [in Article III, Section 31], the word association [also] cannot be held to include a public corporation." *Tranter v. Allegheny County Authority,* 316 Pa. 65, 79, 173 Atl. 289, 295 (1934) (footnote omitted) (citations omitted). Likewise, the Housing Finance Agency cannot be classed as a "special commission" having powers that

---

[5] Article II, Section 1 of the Pennsylvania Constitution states: "The legislative power of this Commonwealth shall be vested in a General Assembly, which shall consist of a Senate and a House of Representatives."

[6] Article III, Section 31 of the Pennsylvania Constitution provides in pertinent part: "The General Assembly shall not delegate to any special commission, private corporation or association, any power to make, supervise or interfere with any municipal improvement, money, property or effects, whether held in trust or otherwise, or to levy taxes or perform any municipal function whatever."

exemplify "the character of legislative interference with local government that was intended to be prevented." *Tranter,* supra at 78, 173 Atl. at 295. The Agency herein involved is exclusively a state-wide governmental instrumentality.

Plaintiff's contention that the H.F.A.L. contravenes Article II, Section 1 is also meritless. Here, the guidelines and standards established for the Housing Finance Agency permit no broad or unusual discretion. In fact, the Legislature has specified with particularity the meaning of such arguable terms as "low rentals," "annual income," "total project cost," "project," and "moderate rentals." H.F.A.L., 35 P.S. §1680.103 (Supp. 1973). Given the complexity of the instant program, it is not objectionable that "many things upon which wise and useful legislation must depend, which cannot be known to the law making power, . . . must, therefore, be a subject of inquiry and determination outside of the halls of legislation." *Gima v. Hudson Coal Co.,* 310 Pa. 480, 484, 165 Atl. 850, 851 (1933).

Having previously upheld agency standards no more definite than those involved here, we cannot conclude that the Legislature has improperly delegated its power to the Housing Finance Agency. See *Pennsylvania Water and Power Resources Board v. Green Spring Co.,* 394 Pa. 1, 7-12, 145 A. 2d 178, 182-83 (1958) ; *Dornan,* supra at 229-30, 200 Atl. at 844, *Kelley v. Earle,* 325 Pa. 337, 352-53, 190 Atl. 140, 147 (1937).

## III

Appellee next argues that the H.F.A.L. is unconstitutional in that it authorizes a debt to be incurred by or on behalf of the Commonwealth, in violation of Ar-

ticle VIII, Section 7 of the Pennsylvania Constitution,[7] and permits an improper loan or pledge of the Commonwealth's credit in contravention of Article VIII, Section 8.[8] Both of these contentions are unfounded.

We earlier noted that the H.F.A.L. unambiguously states that the bonds and notes issued by the Housing Finance Agency "shall not be deemed to constitute a debt of the Commonwealth or of any political subdivision thereof or a pledge of the faith and credit of the Commonwealth or of any such political subdivision." H.F.A.L., 35 P.S. §1680.502a (Supp. 1973). "In view of that declaration, it is difficult to understand how the act in any way impinges upon these [Article VIII, Sections 7 and 8] constitutional provisions." *Dornan,* supra at 231, 200 Atl. at 845.

It is by now well and firmly settled, although appellee would have us decide otherwise, that revenue bonds of the nature authorized by the H.F.A.L. are *not* bonds which fall within the scope of the constitutional prohibition against debt. In *Basehore* this Court held:

"In short, the statutes controlling the bonds issued by the Authorities and the bonds themselves explicitly and unequivocally state that the bonds are not debts of the Commonwealth nor of any political subdivision of the Commonwealth. Such revenue bonds are quite common in this Commonwealth and purchasers of such bonds are well aware that they cannot look to the Commonwealth or any political subdivision for security.

---

[7] Article VIII, Section 7 of the Pennsylvania Constitution provides: "No debt shall be incurred by or on behalf of the Commonwealth except by law and in accordance with the provisions of this section."

[8] Article VIII, Section 8 of the Pennsylvania Constitution states: "The credit of the Commonwealth shall not be pledged or loaned to any individual, company, corporation or association . . . ."

"Our case law supports this position. On numerous occasions we have held that revenue bonds are not debts of the Commonwealth or of any political subdivision: Conrad v. Pittsburgh, 421 Pa. 492, 218 A. 2d 906 (1966); Beam v. Ephrata Borough, 395 Pa. 348, 149 A. 2d 431 (1959); Detweiler v. Hatfield Borough School District, 376 Pa. 555, 104 A. 2d 110 (1954); Greenhalgh v. Woodworth, 361 Pa. 543, 64 A. 2d 659 (1949); Belovsky v. Redevelopment Authority of Philadelphia, 357 Pa. 329, 54 A. 2d 277 (1947); Williams v. Samuel, 332 Pa. 265, 2 A. 2d 834 (1938); Gemmill v. Calder, 332 Pa. 281, 3 A. 2d 7 (1938); Dornan v. Philadelphia Housing Authority, 331 Pa. 209, 200 Atl. 834 (1938); Kelley v. Earle, 325 Pa. 337, 190 Atl. 140 (1937); Tranter v. Allegheny County Authority, 316 Pa. 65, 173 Atl. 289 (1934)."

Despite salutary case law to the contrary, appellee contends that because the H.F.A.L. (35 P.S. §1680.504a (c) (Supp. 1973)) provides that the Legislature is "enabled to provide appropriations sufficient to make up any . . . deficiency [in the Agency's Capital Reserve Fund] or otherwise to avoid any default," the credit of the Commonwealth is being unconstitutionally "pledged or loaned." That argument is flawed in two crucial respects.

Firstly, even if this be viewed as a pledge of the Commonwealth's credit, the pledge extends only to the Pennsylvania Housing Finance Agency, and not to "any individual, company, corporation or association . . ." Pennsylvania Const. Article VIII, Section 8. This activity is not constitutionally proscribed. This Court made clear in *Basehore,* supra at 59, 248 A. 2d at 222, that "[i]f credit is being lent to anyone, it is being lent to the [Agency]." We have already noted that the Pennsylvania Housing Finance Agency is not an "individual, company, corporation or association"

within the meaning of Article VIII, Sections 7 or 8. See *McSorley*, supra at 271, 59 A. 2d at 146; *Belovsky*, supra at 345, 54 A. 2d at 284-85; *Tranter*, supra at 81, 173 Atl. at 296.

Moreover, as the permissive language of the H.F.A.L. indicates, no mandatory obligation is imposed upon the Legislature to appropriate any funds whatsoever to cover an Agency default or Capital Reserve Fund deficiency. The "moral make-up" clause of the H.F.A.L. merely "constitutes . . . an expression of future intention or expectation which has no legally binding effect." *Massachusetts Housing Finance Agency v. New England Merchant's National Bank*, supra at 216, 249 N.E. 2d at 609. Accord, *Maine State Housing Authority v. Depositors Trust Co.*, supra; *Martin v. North Carolina Housing Corp.*, supra; *In re Advisory Opinion*, supra.

In view of our determination that the Commonwealth is not a guarantor of the Agency's obligations, no purchaser or holder of Pennsylvania Housing Finance Agency bonds or notes has any basis "for relying to any extent on any appropriation . . . by the present or any subsequent Legislature, despite the amorphous legislative declaration of intention . . ." that appropriations may be made. *Massachusetts Housing Finance Agency*, supra.

## IV

Appellee's next contention is that Section 508a of the H.F.A.L., 35 P.S. §1680.508a (Supp. 1973), constitutes an "irrevocable . . . grant of special privileges or immunities in violation of Article I, Section 17 of the Pennsylvania Constitution.[9] This argument is also unconvincing.

---

[9] Article I, Section 17 of the Pennsylvania Constitution states: "No . . . law impairing the obligation of contracts, or making ir-

The H.F.A.L., not atypically, contains a covenant by the Commonwealth "not [to] limit or alter the rights or powers hereby vested in the agency to perform and fulfill the terms of any agreement made with the holders of such bonds, bond anticipation notes or other obligations, or in any way impair the rights or remedies of such holders, until such bond, bond anticipation notes and other obligations, together with interest thereon, with interest on any unpaid installments of interest, and all costs and expenses in connection with any action or proceedings by or in behalf of such holders, are fully met and discharged or provided for. The agency may include this pledge and agreement of the Commonwealth in any agreement with the holders of bonds, bond anticipation notes and other obligations issued by the agency." H.F.A.L., 35 P.S. §1680.508a (Supp. 1973). The Act also provides that all obligations of the Agency, and income derived therefrom, will be free from taxation and assessment (with exceptions noted earlier) at all times.

These provisions are obviously constitutional, for any privilege or immunity granted, quite plainly cannot be "irrevocable . . ., for it ends when the obligations assumed by [the Agency] are fully discharged." *Williams v. Samuel,* 332 Pa. 265, 273, 2 A. 2d 834, 838 (1938). As the obligations will exist but for only a definite term, any rights conferred by them "are not irrevocable within the meaning of the Constitution." *Kelley v. Earle,* supra at 356, 190 Atl. at 149.

The challenged provision is nothing more than an amplification of the Federal and State constitutional prohibition against the impairment of contracts. U. S. Const. Art. I, Section 10, Pa. Const. Art. I, Section 17; *Worthen v. Kavanaugh,* 295 U.S. 56, 55 S. Ct. 555 (1935); *Kelley,* supra.

---

revocable any grant of special privileges or immunities, shall be passed."

## V

Appellee additionally avers that the H.F.A.L., by providing for tax exempt agency bonds and notes, violates the constitutional prohibition against exemption from taxation.[10] This argument is meritless.

It is by now well settled that "[b]onds issued by such a governmental instrumentality [like the Pennsylvania Housing Finance Agency] are not the kind of property contemplated by the constitutional prohibition against exemption of any property from taxation other than that specified in the Constitution: Kelley v. Earle, 325 Pa. 337, 356, 190 A. 140, 149; Williams v. Samuel, 332 Pa. 265, 274, 2 A. 2d 834, 839." *Belovsky,* supra at 344, 54 A. 2d at 284.

Indeed, "the use of the property being public, such exemption [from taxation] would follow even in the absence of an express statutory provision to that effect: Dornan v. Philadelphia Housing Authority, 331 Pa. 209, 228, 200 A. 834, 843." *McSorley,* supra at 271, 59 A. 2d at 146.

## VI

The next contention pressed upon us by plaintiff-appellee is that the H.F.A.L. is a "local or special law" in contravention of Article III, Section 32 of the Pennsylvania Constitution.[11] This argument, too, is unpersuasive.

Initially, we note that as the H.F.A.L. contains "no geographical distinction [but rather applies

---

[10] Article VIII, Section 5 of the Pennsylvania Constitution provides: "All laws, exempting property from taxation, other than the property above enumerated, shall be void."

[11] Article III, Section 32 of the Pennsylvania Constitution states: "The General Assembly shall pass no local or special law in any case which has been or can be provided for by general law . . . ."

state-wide] . . . the act cannot be regarded only as a local one." *Bargain City U.S.A. v. Dilworth*, 407 Pa. 129, 133, 179 A. 2d 439, 442 (1962). Nor can the law be classed as "special," in that it is intended to apply throughout the Commonwealth and for the benefit of the entire citizenry. The classification dealing with low and moderate income classes does not render the H.F.A.L. "special"—such classifications, being eminently reasonable, have long been sustained by this Court.

A quarter of a century ago, in *DuFour v. Maize*, 358 Pa. 309, 312-13, 56 A. 2d 675, 677 (1948), this Court held: " 'Legislation for a class distinguished from a general subject is not special, but general, and classification is a legislative question, subject to judicial revision only so far as to see that it is founded on real distinctions in the subjects classified, and not on artificial or irrelevant ones used for the purpose of evading the constitutional prohibition. If the distinctions are genuine, the courts cannot declare the classification void, though they may not consider it to be on a sound basis. The test is, not wisdom, but good faith in the classification.' " (Quoting from *Seabolt v. Commissioners*, 187 Pa. 318, 323, 41 Atl. 22, 24 (1898) ).

Using this standard as our guide, it is clear that the H.F.A.L. does not run afoul of Article III, Section 32.

## VII

Finally,[12] "[a]s is not unusual in attempts to establish that a statute is unconstitutional . . . assault is

---

[12] Appellee also argues that cumulatively, all of the H.F.A.L.'s alleged infirmities render the act unconstitutionally vague. However, having decided all of appellee's substantive arguments adversely to her, this contention, too, is obviously devoid of legal substance.

made on the title of the Act [13] .... It is elementary, however, that the title of an act need not, in order to comply with the constitutional requirement, be an index of its provisions or a synopsis of its contents; so long as it indicates the general subject to which all the provisions of the act are incidental or germane ...." *McSorley,* supra at 272, 59 A. 2d at 146.

"The purpose of the constitutional requirement is that the title shall give notice of the subject dealt with so that a reasonably inquiring state of mind would lead one to examine the body of the Act ...." *Ewalt v. Pennsylvania Turnpike Commission,* 382 Pa. 529, 536, 115 A. 2d 729, 732 (1955).

The title of the instant act[14] satisfies the above re-

---

Moreover, this catch-all averment, not contained in plaintiff-appellee's original complaint, nor in any papers filed with this Court in regard to our assumption of plenary jurisdiction (the argument having been raised for the first time in appellee's brief), is not properly before this Court. Cf. *Robert F. Felte, Inc. v. White,* 451 Pa. 137, 146, 302 A. 2d 347, 352 (1973), and the cases cited therein.

[13] Article III, Section 3 of the Pennsylvania Constitution provides in pertinent part: "No bill shall be passed containing more than one subject, which shall be clearly expressed in its title ...."

[14] "An Act to promote the health, safety and welfare of the people of the Commonwealth by broadening the market for housing for persons and families of low and moderate income and alleviating shortages thereof, and by assisting in the provision of housing for elderly persons through the creation of the Pennsylvania Housing Finance Agency as a public corporation and government instrumentality; providing for the organization, membership and administration of the agency, prescribing its general powers and duties and the manner in which its funds are kept and audited, empowering the agency to make housing loans to qualified mortgagors upon the security of insured and uninsured mortgages, defining qualified mortgagors and providing for priorities among tenants in certain instances, prescribing interest rates and other terms of housing loans, permitting the agency to acquire real or personal property, permitting the agency to make agreements with financial institutions and Federal agencies, providing for the purchase by

quirements; the "general subject to which all the provisions of the act are incidental or germane" is made abundantly clear. *McSorley, supra.* "We are satisfied that the title here provided adequate notice of the Law's purpose to members of the Legislature and to the public." *New Jersey Mortgage Finance Agency v. Mc-Crane, supra* at 425, 267 A. 2d at 30.

We conclude that the Housing Finance Agency Law is constitutional in all respects. Judgment on the pleadings is, therefore, entered for defendant-appellants. Each party to pay own costs.

Mr. Justice NIX took no part in the consideration or decision of this case.

---

persons of low and moderate income of housing units, and approving the sale of housing units, permitting the agency to sell housing loans, providing for the promulgation of regulations and forms by the agency, prescribing penalties for furnishing false information, empowering the agency to borrow money upon its own credit by the issuance and sale of bonds and notes and by giving security therefor, permitting the refunding, redemption and purchase of such obligations by the agency, prescribing remedies of holders of such bonds and notes, exempting bonds and notes of the agency, and income therefrom, and the income and revenues of the agency from taxation, except transfer, death and gift taxes; making such bonds and notes legal investments for certain purposes; and indicating how the act shall become effective." Housing Finance Agency Law, Act of December 5, 1972, P. L. 1259, §1, 35 P.S. §1680.101 (Supp. 1973).