699 F.2d 137
 30 Fair Empl.Prac.Cas. 1383,
30 Empl. Prac. Dec. P 33,309, 9 Ed. Law Rep. 88
 KNOLL, Madelin H., Appellant,
v.
SPRINGFIELD TOWNSHIP SCHOOL DISTRICT, a political
subdivision of the Commonwealth of Pennsylvania; Roman,
Louis A., Superintendent, Springfield Township School
District; Lawn, John J., Hanshaw, Marie M., Commins, James
A., Goren, Sara Lee, Hoch Jr., William C., Hogue Jr., E.
Burke, Kalish, Sally, Lieberman, Max L. and Tobin, Harpur
M., individually and as members of the Board of School
Directors, Springfield Township School District.
 No. 82-1241.
 United States Court of Appeals,
Third Circuit.
 Submitted Under Third Circuit Rule 12(6)
 Jan. 6, 1983.
Decided Jan. 27, 1983.
Petition for Rehearing Denied Feb. 23, 1983.
Statement Sur Denial of Petition for Rehearing Feb. 23, 1983.
 
 Theodore M. Lieverman, Philadelphia, Pa., for appellant.
 Charles Potash, Harris F. Goldich, Wisler, Pearlstine, Talone, Craig & Garrity, Norristown, Pa., for appellee.
 Before ALDISERT, GIBBONS, and HIGGINBOTHAM, Circuit Judges.
 OPINION OF THE COURT
 ALDISERT, Circuit Judge.
 
 
 1
 Until recently, Pennsylvania's omnibus six-year statute of limitations, set forth in the Act of March 27, 1713,[1] properly governed employment discrimination suits brought in Pennsylvania under the federal Civil Rights Acts. By 1978, however, Pennsylvania had repealed the Act of 1713 and completely revised its statutes of limitations.[2] The major question before us is whether a new six-month statute of limitations governing suits against government officials applies to employment discrimination claims brought under 42 U.S.C. Sec. 1983.[3] We hold that because application of the six-month limitations period would be inconsistent with the policies and legislative history underlying Sec. 1983, and because none of Pennsylvania's more specific limitations provisions would apply, that the six-year residuary provision of the limitations schema should govern this dispute. We, therefore, reverse that part of the district court's judgment which determined that appellant's Sec. 1983 claim was time-barred after six months. This appeal also asks us to review the district court's rejection of appellant's claim of employment discrimination brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sec. 2000e-17, as time-barred. We reverse that part of the judgment as well.
 
 I.
 
 2
 For the purposes of our decision, we take as true the material facts alleged in the complaint. They are not complicated. On December 12, 1980, appellant Madelin H. Knoll, a teacher employed by the Springfield Township School District, filed a charge with the United States Equal Employment Opportunity Commission (EEOC), alleging that her employer had discriminated against her on the basis of sex in failing to promote her to several administrative positions. On January 28, 1981, the EEOC issued her a right to sue letter and dismissed the charge as untimely filed. On April 21, 1981, she filed a civil action in the district court against the school district and the individual members of the school board contending that the school district's failure to promote her to the position of Administrative Assistant to the Superintendent in July 1979, and later to Assistant Superintendent in September 1980, violated Sec. 703 of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sec. 2000e-2. The complaint further alleged that the individual school directors had acted under color of state law to deny appellant the equal protection of the laws under the fourteenth amendment, in violation of Sec. 1983.[4]
 
 
 3
 The school district and the individual members of the school board moved for summary judgment, arguing, inter alia, that both claims were barred by statutes of limitations. After oral and written argument, the district court agreed. It ruled that the Sec. 1983 action was time-barred by the new Pennsylvania statute which limits actions against government officials to six months, and that the Title VII claim was time-barred because it was filed more than 180 days from the last discriminatory act which the court determined occurred in July 1979. The district court thus granted the summary judgment motion and dismissed the complaint. From this decision and order, Ms. Knoll appeals.
 
 II.
 
 4
 Appellant's primary contention is that the district court erred in applying Pennsylvania's six-month statute of limitations to her claim of employment discrimination under Sec. 1983. That limitations provision, enacted as part of the new Pennsylvania Judicial Code, provides:
 
 
 5
 (b) Commencement of action required--The following actions and proceedings must be commenced within six months:
 
 
 6
 (1) An action against any officer of any government unit for anything done in the execution of his office, except an action subject to another limitation specified in this subchapter.
 
 
 7
 42 Pa.Cons.Stat.Ann. Sec. 5522(b)(1) (Purdon 1981).
 
 
 8
 She argues that instead the residuary provision of Pennsylvania's limitations schema should govern her cause of action. That Code provision establishes a six-year limitations period for:
 
 
 9
 Any civil action or proceeding which is neither subject to another limitation specified in this subchapter nor excluded from the application by a period of limitation by section 5531 (relating to no limitation).
 
 
 10
 42 Pa.Cons.Stat.Ann. Sec. 5527(6) (Purdon 1981). To support her argument, appellant maintains that the six-month limitations provision is not the most analogous state statute to apply to a Sec. 1983 action, that its application is inconsistent with federal policy, and that the application of different statutes of limitations to government and nongovernment defendants violates her right to equal protection under the law.
 
 
 11
 Appellant's next contention is that the district court erred in determining that her Title VII claim was time-barred. She argues that because appellees engaged in a continuing policy of discrimination, her charge was filed within 180 days of the last discriminatory act, as required by statute.
 
 
 12
 In reviewing the district court's summary judgment order, we are guided, as was the trial court, by the standard set forth in Rule 56(c), F.R.Civ.P.: summary judgment is proper when it appears "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Goodman v. Meade Johnson & Co., 534 F.2d 566, 573 (3d Cir.1976). With this standard in mind, we will address first the question of the statute of limitations applicable to a Sec. 1983 action. In so doing, we note that because the parties do not contest any material fact applicable to that action, we can only uphold the summary judgment ruling as to appellant's Sec. 1983 claim if we find that the six-month statute of limitations applies, as appellees contend, as a matter of law.
 
 III.
 
 13
 Because Congress has not prescribed a specific statute of limitations for actions brought under Sec. 1983, it is necessary to borrow "the state law of limitations governing an analogous cause of action." Board of Regents v. Tomanio, 446 U.S. 478, 483-84, 100 S.Ct. 1790, 1794-1795, 64 L.Ed.2d 440 (1980). Selection of the appropriate state limitations provision "requires characterization of the essential nature of the federal claim within the scheme created by the various state statutes of limitation." Davis v. United States Steel Supply, 581 F.2d 335, 337 (3d Cir.1978). See also Skehan v. Board of Trustees, 590 F.2d 470, 476 (3d Cir.1978), cert. denied, 444 U.S. 832, 100 S.Ct. 61, 62 L.Ed.2d 41 (1979); Meyers v. Pennypack Woods Home Ownership Ass'n, 559 F.2d 894, 900 (3d Cir.1977), Polite v. Diehl, 507 F.2d 119, 122 (3d Cir.1974) (in banc).
 
 
 14
 We have analogized a claim of employment discrimination brought under the federal Civil Rights Acts, to "those torts which involve the wrongful interference with another's economic rights or interests." Skehan, 590 F.2d at 477 (quoting Davis, 581 F.2d at 339). Although these federal Civil Rights Acts do not create federal tort law, they do create, inter alia, a right to be accorded equal status, free of gender-based discrimination in the pursuit of personal economic interests.
 
 
 15
 Review of the new Pennsylvania limitations schema, however, fails to reveal any provision expressly applicable to claims for the torts of wrongful discharge or interference with contractual or economic rights. See 42 Pa.Cons.Stat.Ann. Secs. 5521-5536 (Purdon 1981); Riccobono v. Whitpain Township, 497 F.Supp. 1364, 1375 (E.D.Pa.1980). Further, courts considering these torts have ascertained the applicable limitations period by reference to the two residuary provisions of the limitations scheme--the six-month and the six-year statutes of limitations--which control only when the nature of the dispute falls outside one of the more specific limitations provisions. Compare Clyde v. Thornburgh, 533 F.Supp. 279 (E.D.Pa.1982) (six-month limitations period applicable to Sec. 1983 action) with Riddick v. Cuyler, No. 81-0246 (E.D.Pa. July 16, 1981) (six-year limitations period applicable to Sec. 1983 action). Because appellant's claim does not fit under one of the specific provisions, we must determine which of the two residuary provisions governs her Sec. 1983 action.
 
 
 16
 Our focus in this inquiry must shift from probing the nature of the cause of action--which is irrelevant once the more specific, non-residuary provisions have been discounted as inapplicable--to determining which statute of limitations the Pennsylvania courts would have applied had this action been brought under state law. Because the six-year limitation only applies if the six-month limitation does not, we must first determine whether the courts would have applied the shorter limitation period to an employment discrimination suit brought against public officials under state law. Because appellant seeks relief from the school district and related officials for their unconstitutional actions in discriminating against her in her employment, she clearly brings "an action against any officer of any governmental unit for anything done in the execution of his office." 42 Pa.Cons.Stat.Ann. Sec. 5522(b)(1) (Purdon 1981). We conclude, therefore, that if she had brought her action in state court under state law, it would have been subject to the six-month limitations period. See Clyde, 533 F.Supp. at 286; Eshmont v. Commonwealth, No. 1390 (Pa.Commw.Ct. Nov. 24, 1981).
 
 IV.
 
 17
 The court's authority to borrow a state statute of limitations to fill a void in federal law is not, however, unbounded. In 42 U.S.C. Sec. 1988, from which this borrowing authority is derived, Congress instructs the courts to turn to "the common law, as modified and changed by the constitution and statutes of the [forum] State," so long as it is "not inconsistent with the Constitution and laws of the United States." See Robertson v. Wegmann, 436 U.S. 584, 588, 98 S.Ct. 1991, 1994, 56 L.Ed.2d 554 (1978); Moor v. County of Alameda, 411 U.S. 693, 702-03, 93 S.Ct. 1785, 1792, 36 L.Ed.2d 596 (1973). This instruction reflects Congress' view that a borrowed state statute serves only as the source of the federal law which appropriately governs federal civil rights actions. When poured into the federal vessel, the state statute becomes a federal legal precept, and all aspects of the proceeding must be measured by the federal interest implicated in the case. This limitation on the absorption of state law is necessary because "[s]tate legislatures do not devise their [statutes of limitations] with national interests in mind[. I]t is the duty of the federal courts[, therefore,] to assure that the importation of state law will not frustrate or interfere with the implementation of national policies." Occidental Life Insurance Co. v. EEOC, 432 U.S. 355, 367, 97 S.Ct. 2447, 2454, 53 L.Ed.2d 402 (1977). Thus, in considering the potential applicability of Pennsylvania's six-month statute of limitations, we must keep as our polestar the precept that the analogous state law should not be borrowed if it is "inconsistent with the federal policy underlying [Sec. 1983]." Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 465, 95 S.Ct. 1716, 1722, 44 L.Ed.2d 295 (1975).
 
 
 18
 After carefully considering Sec. 1983's legislative history, the Supreme Court articulated four major policies underlying the statute. First, it can "override certain kinds of state laws," to-wit, "any invidious legislation by states against the rights or privileges of citizens of the United States." Monroe v. Pape, 365 U.S. 167, 173, 81 S.Ct. 473, 476, 5 L.Ed.2d 492 (1961). Second, "it provide[s] a remedy where state law [is] inadequate." Id. Third, it provides "a federal remedy where the state remedy, though adequate in theory, [is] not available in practice." Id. at 174, 81 S.Ct. at 477. Finally, it provides "a remedy in the federal courts supplementary to any remedy any State might have." McNeese v. Board of Educ., 373 U.S. 668, 672, 83 S.Ct. 1433, 1435, 10 L.Ed.2d 622 (1963). In sum, Sec. 1983 offers "a uniquely federal remedy against incursions under the claimed authority of state law upon rights secured by the Constitution and laws of the Nation." Mitchum v. Foster, 407 U.S. 225, 239, 92 S.Ct. 2151, 2160, 32 L.Ed.2d 705 (1972). It should thus be accorded "a sweep as broad as its language." Griffin v. Breckenridge, 403 U.S. 88, 97, 91 S.Ct. 1790, 1795, 29 L.Ed.2d 338 (1971) (quoting United States v. Price, 383 U.S. 787, 801, 86 S.Ct. 1152, 1160, 16 L.Ed.2d 267 (1966)).
 
 
 19
 We conclude that if we were to apply Pennsylvania's six-month statute of limitations, we would contravene the remedial purpose of federal civil rights actions and deny appellant the breadth of Sec. 1983's sweep. We would be forced to ignore Justice Harlan's insightful observation that "a deprivation of a constitutional right is significantly different from and more serious than a violation of a state right and therefore deserves a different remedy even though the same act may constitute both a state tort and the deprivation of a constitutional right." Monroe, 365 U.S. at 196, 81 S.Ct. at 488 (Harlan, J., concurring). And we would ultimately defy congressional intent. In so concluding, we are influenced by pragmatic considerations as well as the legislative history and conceptual underpinning of the federal rights herein sought to be vindicated.
 
 A.
 
 20
 Although actions under Sec. 1983 have been permitted since 1871, the use of this remedial vehicle in the modern era dates back only to 1961 and the landmark case of Monroe v. Pape, in which the Court courageously blazed a new and wide trail in constitutional law for the dual purposes of compensating persons injured by deprivation of federal rights and preventing abuses of power by those acting under color of state law. Since that decision, the definition of rights and remedies under the Civil Rights Acts has been an ongoing, dynamic process. Although experienced federal and state judges, members of the professoriat, and many, but not all, lawyers may be acutely aware of this definitional process, this professional familiarity is not widespread among members of the public. We are persuaded, therefore, that the average plaintiff who has been injured by state action is not sufficiently conversant with the intricacies and subtleties of constitutional law to recognize the constitutional deprivation, consult a lawyer, and prepare a case for filing in court within six months. Such a short statute of limitations is not "sufficiently generous in [its] time period[] to preserve the remedial spirit of federal civil rights actions." Childers v. Independent School Dist., 676 F.2d 1338, 1343 (10th Cir.1982) (quoting Shouse v. Pierce County, 559 F.2d 1142, 1146 (9th Cir.1977)).
 
 B.
 
 21
 In addition, while the equal protection clause is not designed to create uniformity out of political, economic, and cultural diversity, it does command that the state treat every person with equal care and respect. When there is evidence that the state failed to accord such treatment, there is evidence that individuals' constitutional rights may have been violated. The decisions of courts seeking to vindicate these rights, as here, indicates that we are close to fulfilling Karl Llewellyn's prophecy of a half century ago:
 
 
 22
 [T]he focus of study, the point of reference for all things legal has been shifting, and should now be consciously shifted to the area of contact, of interaction, between official regulatory behavior and the behavior of those affecting or affected by official regulatory behavior....[5]
 
 
 23
 If, with Dean Eugene V. Rostow, we agree that the purpose of the Constitution is to assure the people a free and democratic society and that the final aim of that society is to provide as much freedom and equality as possible for individuals, we can also agree that there has been no procedural device in the modern era that has guaranteed those assurances more than the remedies available through Sec. 1983. This statute furnishes bone and sinew to what Dean Rostow described as the root idea of the Constitution: "man can be free because the state is not."[6] Desirable public policy, as evidenced by volumes of reported cases at all levels of the judiciary, is that the courthouse doors be open for, rather than closed to, the vindication of these individual rights alleged to have been threatened by official regulatory behavior.
 
 
 24
 Applying a six-month statute of limitations would have a decided tendency to severely limit access to the courts for the purpose of vindicating these individual rights. It would be counterproductive to the popular recourse to the Civil Rights Acts. And it also would fly in the face of Cardozo's admonition that "the final cause of law is the welfare of society. The rule that misses its aim cannot permanently justify its existence."[7]
 
 C.
 
 25
 Even if application of the six-month limitations provision would not contravene the remedial spirit of the federal Civil Rights Acts, it would be inconsistent with the legislative history and subsequent judicial construction of those Acts. Section 1983 derives from Sec. 1 of the Civil Rights Act of 1871. Act of April 20, 1871, ch. 22, Sec. 1, 17 Stat. 13. State action is required for it to become operative. Because Sec. 1983 represents only one section of the 1871 Act, however, it should not be considered in vacuo, and interpretive reference should be made to other relevant provisions, such as Sec. 2 of the Act, now codified as Sec. 1985(2),[8] which reaches private action. See Griffin, 403 U.S. at 96-101, 91 S.Ct. at 1795-1797.
 
 
 26
 In considering the legislative history surrounding these two provisions of the 1871 Act,[9] we have unearthed no evidence that Congress intended one limitations period to apply to suits brought under Sec. 1, where state action is required, and another period to apply to Sec. 2 suits implicating private action. But if we apply the literal language of the new Pennsylvania statutes of limitations, that is exactly what results. Because government officials are uniformly defendants in Sec. 1983 suits, the six-month limitations provision of Sec. 5522(b)(1) would govern their causes of action; whereas a Sec. 1985(2) suit against a non-government defendant would always be subject to one of the other limitations provisions.
 
 
 27
 In addition to Secs. 1983 and 1985, several other statutes comprise the remainder of the federal Civil Rights Acts. An examination of two of these statutes, 42 U.S.C. Sec. 1981[10] and 1982,[11] which, like Sec. 1985, reach private action, highlights the anomalous result that can stem from applying different statutes of limitations to suits involving private and public defendants.
 
 
 28
 Suits brought under Secs. 1981 and 1982 against private defendants, like those brought under Sec. 1985, would never be subject to Pennsylvania's six-month statute of limitations. In fact, we have recently held that a claim based on Sec. 1981, charging a private employer with failure to protect an employee from harassment because of race, would be subject to a six-year statute of limitations. Davis, 581 F.2d at 341. We also have held that a claim based on Secs. 1981 and 1982, alleging a wrongful refusal to sell or rent housing, would be subject to a six-year limitations period. Meyers, 559 F.2d at 903. Even though these decisions pre-date the recodification of Pennsylvania's statutes of limitations, because they involve private defendants in discrimination actions that would not be covered by the more specific provisions of the new Code, the residuary six-year period of limitations would still apply were these suits instituted today under the new limitations schema.
 
 
 29
 We refuse to believe, however, that Congress intended to sanction the application of a six-year limitations period to federal civil rights actions involving housing or race discrimination where the parties were private citizens, but only a six-month statute of limitations to otherwise identical actions involving public officials. Such a result would be contrary to the statutory schema adopted in 1871 in which Congress addressed in one comprehensive statute both public and private discrimination. "It is abundantly clear that one reason [Sec. 1983] was passed was to afford a federal right in federal courts because ... the claims of citizens to the enjoyment of the rights, privileges, and immunities guaranteed by the Fourteenth Amendment might be denied by state agencies." Monroe, 365 U.S. at 180, 81 S.Ct. at 480. To constrict this right by imposing a six-month limitations statute where there are public defendants would, in our view, run completely counter to the intent of the 1871 Congress. Because we reject the application of the shorter limitations provision as violative of the policy and legislative history underlying Sec. 1983, we need not go on to address appellant's constitutional argument that applying different limitations provisions to government and nongovernment defendants violates her rights to equal protection. See Ashwander v. TVA, 297 U.S. 288, 341, 56 S.Ct. 466, 480, 80 L.Ed. 688 (Brandeis, J., concurring).
 
 D.
 
 30
 "We are not at liberty to seek ingenious analytical instruments" that would dilute the power of Sec. 1983 or the majesty of its objectives. See Price, 383 U.S. at 801, 86 S.Ct. at 1160. Accordingly, we hold that the district court erred in applying Pennsylvania's six-month statute of limitations to this Sec. 1983 action as a basis for granting appellee's summary judgment motion. The void created by Congress' failure to establish a statute of limitations for Sec. 1983 actions cannot be filled with a state limitations provision which is inconsistent with the federal interest sought to be vindicated. In addition, we conclude that Pennsylvania's residuary six-year statute of limitations, which applies in the absence of another applicable limitations provision, should govern this Sec. 1983 action because it "better serves the policies expressed in the federal statute[]." Sullivan v. Little Hunting Park, Inc., 396 U.S. 229, 240, 90 S.Ct. 400, 406, 24 L.Ed.2d 386 (1969).
 
 V.
 
 31
 We now turn to appellant's claim of employment discrimination based on a violation of Title VII. We first note that because a cause of action under Sec. 1983 is distinct and independent, and has different procedural, jurisdictional, and remedial characteristics from a Title VII action, that appellant has the right to proceed under both statutes. Scott v. University of Del., 601 F.2d 76, 79 n. 2 (3d Cir.), cert. denied, 444 U.S. 931, 100 S.Ct. 275, 62 L.Ed.2d 189 (1979). Moreover, the legislative history of Title VII supports "the clear inference ... that Title VII was designed to supplement, rather than supplant, existing laws and institutions relating to employment discrimination." Alexander v. Gardner-Denver Co., 415 U.S. 36, 48-9, 94 S.Ct. 1011, 1019-1020, 39 L.Ed.2d 147 (1974).
 
 
 32
 To affirm the district court's summary judgment order, we must determine that there existed no dispute as to any material fact and that defendants were entitled to judgment as a matter of law. Goodman, 534 F.2d at 573. Neither this court on appeal nor the district court at trial is authorized, in approving a summary judgment order, to decide disputed issues of fact; our sole task is to determine whether an unresolved issue of material fact existed at the time the ruling was made. Id. Accordingly, we must view inferences from facts contained in the evidentiary materials submitted to the district court in the light most favorable to the party opposing the summary judgment motion. Id. That party's allegations must be taken as true and, when those assertions conflict with those of the movant, the former must receive the benefit of the doubt. Id.; see, e.g., United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam); Smith v. Pittsburgh Gage & Supply Co., 464 F.2d 870, 874 (3d Cir.1972).
 
 
 33
 By its terms, Title VII requires that a charge be filed with the EEOC within 180 days of the alleged discriminatory act. This requirement operates as a statute of limitations, such that a complainant's failure to file within this period operates to bar relief in federal court on the merits. Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 392-396, 102 S.Ct. 1127, 1131-1134, 71 L.Ed.2d 234 (1982). The district court found that the last act of discrimination took place in July, 1979 when appellant's application for the post of Administrative Assistant was denied. We must decide, therefore, not whether this district court determination was correct, but whether in making it, the district court impermissibly resolved a disputed issue of material fact.
 
 
 34
 Before us, appellant urges, as she did before the district court, that the appellees engaged in a continuing policy of discrimination. She contends that the school district committed three distinct acts of discrimination, to-wit, on August 2, 1979 when the male applicant Romano was hired as Administrative Assistant; on or about May 28, 1980 when the Superintendent notified her that he would not, as promised, create an administrative position for her during the next school year; and in September 1980 when Romano was promoted to Assistant Superintendent. She maintains that appellees' policy of discrimination existed in 1979 and lasted through September, 1980.
 
 
 35
 In determining the motion for summary judgment, the district court had before it only plaintiff's complaint, her exhibits, the answer, the briefs, and its recollection of oral argument. The parties did not supply the court, and the materials furnished us do not disclose, any depositions, answers to interrogatories, and admissions on file, together with supporting affidavits, which are permitted in summary judgment procedures under Rule 56(e), F.R.Civ.P.
 
 In her complaint plaintiff averred:
 
 36
 22. The decisions not to promote Plaintiff Knoll into an administrative position in July 1979, May 1980 and September 1980, were the result of a continuing policy of discrimination against Plaintiff on the basis of sex by the School District and its officers, agents and representatives acting within the scope of their authority and on behalf of the School District.
 
 
 37
 (Emphasis added). The defendants presented a general denial, but no countervailing facts to dilute her averment of a continuing policy of discrimination.
 
 
 38
 In the context of a summary judgment proceeding, we must accept as true plaintiff's averment that defendants maintained a continuous policy of discrimination that lasted into September, 1980. However, we do not hold that plaintiff proved her contention as to when the last discriminatory act occurred, only that whether that last act occurred in September 1980 is a material fact that was still in dispute at the time the district court granted the summary judgment motion. Thus, the district court erred when it determined that, as a matter of law, appellant's Title VII claim was time-barred. See Reed v. Lockheed Aircraft Corp., 613 F.2d 757 (9th Cir.1980).
 
 VI.
 
 39
 Accordingly, we will reverse the summary judgment order of the district court and remand the cause for further proceedings.
 
 SUR PETITION FOR REHEARING
 
 40
 Before SEITZ, Chief Judge, ALDISERT, ADAMS, GIBBONS, HUNTER, WEIS, GARTH, HIGGINBOTHAM, SLOVITER and BECKER, Circuit Judges.
 
 
 41
 GIBBONS, Circuit Judge.
 
 
 42
 The petition for rehearing filed by Appellees in the above entitled case having been submitted to the judges who participated in the decision of this court and to all the other available circuit judges of the circuit in regular active service, and no judge who concurred in the decision having asked for rehearing, a majority of the circuit judges of the circuit in regular active service not having voted for rehearing by the court in banc, the petition for rehearing is denied.
 
 
 43
 ADAMS, WEIS, GARTH and HUNTER, Circuit Judges, would grant rehearing in banc.
 
 
 44
 STATEMENT OF JUDGE ADAMS SUR DENIAL OF PETITION FOR REHEARING
 
 
 45
 The panel decides that the six-month limitations period of 42 Pa.Cons.Stat.Ann. Sec. 5522(b)(1) (Purdon 1981) is inapplicable to actions brought under 42 U.S.C. Sec. 1983, because six months is so brief as to be inconsistent with the policies of section 1983. This position is taken despite the panel's recognition that in section 1983 actions the federal courts must normally borrow the state limitations period governing analogous causes of action, and that, had the present action been brought "in state court under state law, it would have been subject to the six-month limitations period." Slip op. at 8.
 
 
 46
 In holding that the six-month period is too constricting, the panel breaks with the two other circuits that have decided this issue. In Burns v. Sullivan, 619 F.2d 99, 106-107 (1st Cir.1980), the court held that a six-month limitation is reasonable in section 1983 cases, and Warren v. Norman Realty Co., 513 F.2d 730, 733-35 (8th Cir.1975), applied a 180 day limit of a Nebraska statute of limitations to a federal action under 42 U.S.C. Sec. 1982.[1]
 
 
 47
 As the panel notes, a federal court is not authorized to cure lacunae in federal law by borrowing state statutes of limitations that frustrate national policies. See Occidental Life Insurance Co. v. EEOC, 432 U.S. 355, 367, 97 S.Ct. 2447, 2454, 53 L.Ed.2d 402 (1977). But in its most recent declaration on the subject, the Supreme Court warned that state statutes of limitations are normally binding in section 1983 cases:
 
 
 48
 In Sec. 1983 actions ... a state statute of limitations and the coordinate tolling rules are more than a technical obstacle to be circumvented if possible. In most cases, they are binding rules of law. In 42 U.S.C. Sec. 1988, Congress "quite clearly instructs [federal courts] to refer to state statutes" when federal law provides no rule of decision for actions brought under Sec. 1983. Robertson v. Wegmann, 436 U.S. 584 [98 S.Ct. 1991, 56 L.Ed.2d 554] (1978). See also Carlson v. Green, [446 U.S. 14, 22 n. 10, 100 S.Ct. 1468, 1473 n. 10, 64 L.Ed.2d 15 (1980) ]. As we held in Robertson, by its terms, Sec. 1988 authorizes federal courts to disregard an otherwise applicable state rule of law only if the state law is "inconsistent with the Constitution and laws of the United States."
 
 
 49
 Board of Regents of the University of the State of New York v. Tomanio, 446 U.S. 478, 484-85, 100 S.Ct. 1790, 1795, 64 L.Ed.2d 440 (1980) (footnote omitted).
 
 
 50
 The Supreme Court in Tomanio took occasion to reiterate its emphasis on "the importance of the policies underlying state statutes of limitations." Id. at 487, 100 S.Ct. at 1796. To gauge whether state limitations statutes are consonant with the policies underlying section 1983, Tomanio instructed the federal courts that "the state and federal policies which the respective legislatures sought to foster must be identified and compared." Id. at 487, 100 S.Ct. at 1796.
 
 
 51
 There is no indication that the opinion in the present case follows Tomanio's direction to give weight to the significant policies underlying the state statute of limitations. Moreover, despite its description of the general policies behind section 1983, the panel has not explained with any precision why the six-month period cannot be squared with those policies. Indeed, much of the same reasoning that the panel employs in rejecting the limitations period of section 5522(b)(1) could equally be applied to strike down any limitations period, for any such period arguably circumscribes the broad sweep of section 1983. The panel has made no attempt to demonstrate with specific reference to the facts of this case that six months was insufficient for the plaintiff to file a complaint. Instead, without citing any evidence or empirical data, it speaks of this period as being too limited for the "average plaintiff." At 142.[2] The panel does not even rely on the special nature of employment discrimination cases; it appears to indicate that six months is too short in all types of section 1983 actions. Thus the panel seemingly would make it impossible to borrow a six-month statute even in section 1983 actions that easily could be commenced within six months. I cannot see why, for example, a prisoner alleging that the warden improperly deprived him of some of his property could not be expected to file a complaint within six months. Yet a large proportion of section 1983 actions are brought by prisoners making allegations such as this.
 
 
 52
 In sum, I believe that this case warrants rehearing before the entire court because it appears that the panel, in disregard of Tomanio, neither considered the state policies involved nor identified with any specificity the federal policies, and also because I am concerned about the creation of a split among the circuits on this highly important issue.
 
 
 53
 HUNTER, WEIS, and GARTH, Circuit Judges, join in this statement.
 
 
 
 [1]
 Pa.Stat.Ann. tit. 12, Sec. 31 (Purdon 1953 & Supp.1982) (repealed 1978)
 
 
 [2]
 See Act of July 9, 1976, 42 Pa.Cons.Stat.Ann. Secs. 5521-5536 (Purdon 1981)
 
 
 [3]
 42 U.S.C. Sec. 1983 provides:
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ..., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....
 
 
 [4]
 She averred in her complaint, inter alia, that:
 1) she was fully qualified and certified for the position of Administrative Assistant to the Superintendent of the School District for which she applied in July 1979;
 2) she was notified by Superintendent Louis A. Roman on August 2, 1979 that he had chosen Frank Romano, a male applicant with fewer qualifications and no Pennsylvania Department of Education certification, to be his Administrative Assistant;
 3) shortly thereafter, Superintendent Roman promised he would create an administrative position for her during the 1979-80 school year as compensation for not having chosen her for the position of Administrative Assistant, that no such position was created, and that on May 28, 1980, Roman wrote her that he would not, in fact, create such a position for her during the next school year;
 4) in September 1980, Administrative Assistant Frank Romano was promoted to Assistant Superintendent, a position which had existed in the past but was recreated specifically for him;
 5) although the school district, its officers, agents, and representatives, knew that she was willing and qualified to assume the position of Assistant Superintendent in September 1980, she was not offered an opportunity to compete for the vacancy and was not considered for same because of her sex;
 6) the decisions not to promote her to administrative positions in July 1979, May 1980, and September 1980 were the result of a continuing policy of sex discrimination by the school district and its officers, agents, and representatives.
 
 
 [5]
 Llewellyn, A Realistic Jurisprudence--The Next Step, 30 Colum.L.Rev. 431, 464 (1930)
 
 
 [6]
 Rostow, The Democratic Character of Judicial Review, 66 Harv.L.Rev. 193, 195 (1952)
 
 
 [7]
 B. Cardozo, The Nature of the Judicial Process 66 (1921)
 
 
 [8]
 42 U.S.C. Sec. 1985(2) punishes persons who, inter alia:
 conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws.
 For the original draft of Sec. 2 of the Act of 1871 and a history of its subsequent codification by Secretary of State Hamilton Fish in 1874, see Brawer v. Horowitz, 535 F.2d 830, 837-41 (3d Cir.1976).
 
 
 [9]
 See e.g., The Reconstruction Amendments' Debates 484-570 (Va.Comm'n. on Const. Gov't 1967) (setting forth excerpts of the debates reprinted in the Congressional Globe, 42d Cong., 1st Sess. (1871))
 
 
 [10]
 42 U.S.C. Sec. 1981 provides:
 All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
 
 
 [11]
 42 U.S.C. Sec. 1982 provides:
 All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.
 
 
 [1]
 In Major v. Arizona State Prison, 642 F.2d 311 (9th Cir.1981), the Ninth Circuit determined that a one year statute was not inconsistent with section 1983. But cf. Childers v. Independent School District No. 1 of Bryan County, State of Oklahoma, 676 F.2d 1338 (10th Cir.1982), which held a 120 day limitations period for nonjudicial proceedings to be inconsistent with section 1983. In Johnson v. Davis, 582 F.2d 1316, 1319 (4th Cir.1978), the court disregarded a special one year state statute of limitations for section 1983 actions in favor of the two year period of the general state statute, because of the absence of a "fair grouping and valuation of Sec. 1983 actions within the Virginia scheme of limitation periods [and because of the absence of] some other reasonable basis for applying a shorter period for remedying a 'constitutional tort' than for remedying the underlying state tort...." The Johnson court held that to apply the special statute would be to "condone an unreasonable discrimination between the assertion of federally protected rights and rights protected under Virginia law," id. at 1317. The panel in the present case, however, does not suggest that the Pennsylvania six-month statute discriminates against federal rights. See also Shouse v. Pierce County, 559 F.2d 1142, 1146 (9th Cir.1977) (refusing to borrow a 30 day period)
 
 
 [2]
 It is worth noting that when Congress has prescribed periods for the filing of charges under civil rights statutes, it has sometimes chosen a limit of 180 days. See 42 U.S.C. Sec. 2000e-5(e) (Sec. 706(e) of Title VII of the Civil Rights Act of 1964, as amended); 42 U.S.C. Sec. 3610(b) (Sec. 810 of Title VIII of the Civil Rights Act of 1968). I recognize, of course, that it may require more time to prepare a complaint to be filed in federal district court than to bring a charge with the Equal Employment Opportunity Commission under 42 U.S.C. Sec. 2000e-5 or with the Secretary of Housing and Urban Development under 42 U.S.C. Sec. 3610. On the other hand, the federal rules permit liberal amendments of complaints brought in district court, and so a time limit on federal complaints may not be as burdensome as it seems
 In the present case the same facts that give rise to the plaintiff's section 1983 action also form the basis of her Title VII claim. The panel does not explain why Congress, although giving the plaintiff only six months to file her Title VII charge with the EEOC, could not have intended for the federal courts to borrow a six-month state statute of limitation to bar the plaintiff's section 1983 action.