Sandra BRADERMAN, Plaintiff,

v.

**PENNSYLVANIA HOUSING FINANCE AGENCY, Commonwealth of Pennsylvania, et al., Defendants.**

Civ. A. No. 84–1244.

United States District Court, M.D. Pennsylvania.

Dec. 4, 1984.

Greg Knight, Tive, Hetrick & Pierce, P.C., Harrisburg, Pa., for plaintiff.

Gregory R. Neuhauser, Deputy Atty. Gen., Harrisburg, Pa., for defendants.

## MEMORANDUM

CALDWELL, District Judge.

### I. Introduction

Plaintiff, Sandra Braderman, has filed a complaint in which she alleges she was discharged from her position as a legal secretary at the Pennsylvania Housing Finance Agency (PHFA) in violation of her First Amendment right to freedom of association. The complaint also makes state constitutional and state law claims for relief. Defendants, PHFA, Harold Dunbar, its former chief counsel, and Trudy Baum, PHFA's director of personnel, have filed motions to dismiss plaintiff's complaint pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6).

### II. PHFA's Motion to Dismiss

PHFA contends as its sole ground for dismissal that it is a part of the Commonwealth and, accordingly, the Eleventh Amendment divests this court of jurisdiction to adjudicate plaintiff's claim against it. Conversely, plaintiff contends that the Eleventh Amendment is inapplicable because PHFA is financially independent of the Commonwealth. After careful review of the briefs of both parties and the applicable law we conclude that PHFA is not a part of the Commonwealth and not entitled to Eleventh Amendment immunity.

Defendant correctly points out that state authority, cited by plaintiff, dealing with sovereign immunity from tort is not dispositive of its claim of Eleventh Amendment immunity. "Whether or not an agency or instrumentality is the alter ego of the state and, therefore, immune from suit by virtue of the Eleventh Amendment is a question of federal, not state, law." *Harris v. Pennsylvania Turnpike Commission*, 410 F.2d 1332, 1333 n. 1 (3d Cir.1969), *cert. denied*, 396 U.S. 1005, 90 S.Ct. 558, 24 L.Ed.2d 497 (1970). We cannot agree with defendant, however, that the "general rule" set forth in *Pennhurst State School & Hospital v. Halderman*, —— U.S. ——, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (Pennhurst II) applies to Eleventh Amendment determinations. There, the Supreme Court stated: "The general rule is that a suit is against the sovereign if 'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration,' or if the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act.'" *Id.* at —— n. 11, 104 S.Ct. at 908 n. 11, 79 L.Ed.2d at 79 n. 11 (quoting *Dugan v. Rank*, 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15, 23 (1963)). While this quotation is correct as an abstract statement of the law, it provides no guidance in determining what constitutes

the "government" for Eleventh Amendment purposes nor do we believe that it was intended for such a purpose. The Third Circuit Court of Appeals has adopted a more specific and comprehensive test which is as follows:

> * * * [L]ocal law and decisions defining the status and nature of the agency involved in its relations to the sovereign are factors to be considered, but only one of a number that are of significance. Among the other factors, no one of which is conclusive, perhaps the most important is whether, in the event plaintiff prevails, the payment of the judgment will have to be made out of the state treasury; significant here also is whether the agency has the funds or the power to satisfy the judgment. Other relevant factors are whether the agency is performing a governmental or proprietary function; whether it has been separately incorporated; the degree of autonomy over its operations; whether it has the power to sue and be sued and to enter into contracts; whether its property is immune from state taxation, and whether the sovereign has immunized itself from responsibility for the agency's operations.

*Urbano v. Board of Managers of New Jersey State Prison*, 415 F.2d 247, 250–51 (3d Cir.1969), *cert. denied*, 397 U.S. 948, 90 S.Ct. 967, 25 L.Ed.2d 129 (1970) (footnotes omitted) (quoting *Krisel v. Duran*, 258 F.Supp. 845, 849 (S.D.N.Y.1966), *aff'd per curiam*, 386 F.2d 179 (2d Cir.1967), *cert. denied*, 390 U.S. 1042, 88 S.Ct. 1635, 20 L.Ed.2d 303 (1968)).

This test requires us to review PHFA's statutory scheme.

The Housing Finance Agency Law, Act of Dec. 3, 1959, P.L. 1688, Art. I, § 101 *et seq., as amended*, 35 P.S. § 1680.101 *et seq.*, created PHFA as a "public corporation," *see* 35 P.S. § 1680.201, to provide financing for the construction and rehabilitation of homes and rental housing for persons, including the elderly, of moderate and low incomes. 35 P.S. § 1680.102. The members of the agency are the Secretary of Community Affairs, the State Treasurer, the Secretary of Commerce and the Secretary of Banking. Six additional members are appointed by the governor. The latter are each appointed for a six year term with the approval of two-thirds of the state senate. *Id.* at § 1680.202. The agency's governing board consists of its members. *Id.* at § 1680.203.

Among other powers, PHFA can adopt, use and alter at will a corporate seal, make and alter bylaws for the management and regulation of its affairs, enter into contracts of all kinds and execute all instruments necessary or convenient for carrying on its operations, be a party litigant to lawsuits, acquire, hold and dispose of tangible and intangible personal property, acquire, hold and dispose of real property, borrow money for the operation and work of the agency by the making of notes and by the issuance of bonds, employ an executive director and such other officers, agents, employees, professional and business advisers as may from time to time be necessary in its judgment and to fix their compensation, and do all things necessary or convenient to carry out the powers granted by the Act; *Id.* at § 1680.205.

Agency moneys are paid to the treasurer of the agency and held in one or more special accounts. *Id.* at § 1680.206. The agency's bonds and notes are issued subject to the written approval of the governor. *Id.* at §§ 1680.501a, 1680.501a.1. They are tax exempt, general obligations of the agency and are "not deemed to constitute a debt of the Commonwealth or of any political subdivision thereof or a pledge of the faith and credit of the Commonwealth or of any such political subdivision." *Id.* at §§ 1680.502a, 1680.506a. While the agency is authorized to create "capital reserve funds" into which the General Assembly may contribute, the General Assembly has no legal obligation to do so. *Id.* at § 1680.504a(c); *Johnson v. Pennsylvania Housing Finance Agency*, 453 Pa. 329, 309 A.2d 528 (1973).

PHFA generates revenue by lending money to any mortgagor for the construc-

tion, reconstruction or rehabilitation of housing for sale or lease to persons of low or moderate incomes. *Id.* at §§ 1680.301a, 1680.401a. The agency also finances the purchase, construction, improvement or rehabilitation of owner-occupied single family residences by contract with lending institutions. *Id.* at § 1680.401b (Purdon Supp. 1984–85).

Finally, PHFA administers the Homeowner's Emergency Mortgage Assistance Fund. The Fund is a separate account used to make emergency loans to mortgagors who, through no fault of their own, are suffering financial hardships making them delinquent on their mortgage payments. *Id.* at §§ 1680.401c, 1680.404c. The program differs from others carried out by PHFA in that the Fund cannot be used by the agency unless funding is specifically authorized and appropriated by the Pennsylvania General Assembly for the purposes provided for by Article IV–C of the Act. *Id.* at § 1680.408c (Purdon Supp. 1984–85). PHFA also cannot independently raise revenue for the Fund. Aside from the General Assembly, which authorized appropriation of up to $25,750,000.00 for the Fund in fiscal year 1984–85, *see* Act of May 31, 1984, No. 73–1984, § 3, its funding comes from business entities, which may make tax deductible contributions to it. 35 P.S. § 1680.410c. Repayments to the Fund by mortgagors are to be transferred back to the source from which the money was appropriated. *Id.* at § 1680.408c.

We now apply the *Urbano* test in light of the above statutory organization of PHFA.

A. Whether PHFA has corporate powers and is automonous.

PHFA possesses those specific attributes the Court of Appeals considers significant in concluding that a governmental body is automonous. It is separately incorporated, can sue and be sued in its own name, can enter into contracts, acquire property, and perform all things necessary or convenient to carry out its corporate powers.

Against these indications of autonomy, defendant PHFA asserts the following: (1) four members of the governing board are also members of the governor's cabinet who serve at the governor's pleasure while the remaining six members are appointed by the governor subject to confirmation by the Senate; and (2) the issuance of PHFA's bonds and notes are subject to the written approval of the governor.

Defendant's contentions have some merit but not enough, in showing that PHFA is not independent of the Commonwealth. In connection with the governor's authority over the membership in the agency, we first note that defendant incorrectly asserts that the State Treasurer serves "at the pleasure of the Governor." Defendant's reply brief at 6. Actually, the office of State Treasurer is an elective one. *See* Pa. Const. Art. IV, § 18. As such, the State Treasurer is independent of the Governor. Additionally, 35 P.S. § 1680.202 provides that the six appointive members of the agency, who together with the State Treasurer, form a seven person majority of the agency and governing board, shall serve staggered six year terms. Thus, the governor cannot remove these members at his pleasure. *Commonwealth ex rel. Sortino v. Singley*, 481 Pa. 367, 392 A.2d 1337 (1978); *Schluraff v. Rzymek*, 417 Pa. 144, 208 A.2d 239 (1965). Even admitting that the remaining three members of the agency, the Secretary of Community Affairs, the Secretary of Commerce, and the Secretary of Banking, would serve at the whim of the governor, *see* Pa. Const. Art. VI, § 7; 71 P.S. § 67.1(d)(1) (Purdon Pamphlet 1984–85); *Commonwealth ex rel. Houlahen v. Flynn*, 348 Pa. 101, 34 A.2d 59 (1943), this statutory arrangement of the agency membership indicates that the governor's voice in the selection of agency members is less significant than their day-to-day autonomy in running the agency. The Pennsylvania Turnpike Commission has a similar method of choosing commissioners but the courts have concluded that the Turnpike Commission has no Eleventh Amendment immunity. *See Linger v. Pennsylvania Turnpike Commission*, 158 F.Supp. 900 (W.D.Pa.1958).

Defendant's second contention deals with the statutory requirement that the governor give his written approval before the agency issues any bonds or notes. If this were otherwise a "close case," *see Blake v. Kline*, 612 F.2d 718, 726 (3d Cir.1979), we would be inclined to develop a record "beyond the mere statutory language," *id.*, to determine how much control the governor actually exercises over the issuance of bonds and notes.[1] Since this is just one factor among others, however, we can concede that PHFA's argument has some merit but also conclude that it is outweighed by the other statutory indications of autonomy and separateness.

B. Local Law defining the status and nature of PHFA and its relation to Pennsylvania.

Defendant contends that *Edwards v. The Pennsylvania Housing Finance Agency*, No. 2224 C.D. 1981 (Pa.Commw. Oct. 21, 1983) establishes that PHFA is not an independent agency. "[S]tate decisions concerning the relationship of an agency to the state may be an important, and under certain circumstances a controlling factor in the determination of immunity," *Blake v. Kline, supra*, 612 F.2d at 722 (brackets added), but *Edwards* is not such a case. It dealt solely with whether the governor's general counsel had the authority under the Commonwealth Attorneys Act, Act of October 15, 1980, P.L. 950, No. 164, § 101 *et seq.*, 71 P.S. § 732–101 *et seq.*, (Purdon Pamphlet 1984–85), to hire and discharge the agency's counsel. As the court itself noted in *Edwards:* "We do not find that our prior opinion in *Pennsylvania Housing Finance Agency v. Abreen Corporation*, [—— Pa.Commw. ——, 480 A.2d 335 (1982)] ... requires a contrary conclusion. The P.H.F.A.'s financial status for purposes of sovereign immunity and the jurisdiction of this court and the Board of Claims is not

relevant to a determination of the applicability of the Administrative Code of 1929 or its supplement, the Commonwealth Attorneys Act, to the agency." *Edwards*, slip op. at 7. (brackets added) Accordingly, we also do not consider *Edwards* relevant to a determination of PHFA's Eleventh Amendment immunity. Rather, *Abreen* is the appropriate case to look to in determining how state courts have construed the relationship of PHFA to the Commonwealth.

In *Pennsylvania Housing Finance Agency v. Abreen Corp.*, —— Pa.Commw. ——, 480 A.2d 335 (1982), the Commonwealth Court, using a financial independence test, held that PHFA was not the "Commonwealth" so that PHFA could invoke the exclusive jurisdiction of the Board of Claims under 72 P.S. § 4651–4 in a construction contract dispute. In doing so, the court relied upon *Johnson v. Pennsylvania Housing Finance Agency*, 453 Pa. 329, 309 A.2d 528 (1973), which upheld the constitutionality of PHFA's enabling legislation. The Supreme Court in *Johnson* emphasized the financial independence of PHFA. By statute, its bonds and notes were not the debts of the Commonwealth. Moreover, the Commonwealth had insulated itself from PHFA's liabilities. *Abreen* supports a conclusion here that PHFA is not the alter ego of the Commonwealth and therefore not entitled to Eleventh Amendment immunity.

C. Whether payment of the judgment will be made from the state treasury or from PHFA funds.

The statutory powers conferred on PHFA, detailed above, lead us to conclude, as the court in *Abreen* did, that any judgment rendered against PHFA would not be satisfied out of the state treasury.[2] PHFA

---

1. Turnpike Commission bonds also require the facsimile signature of the governor, *see* 36 P.S. § 652h, but, as noted previously, the Turnpike Commission does not have Eleventh Amendment immunity.

2. At the time *Abreen* was decided the Homeowner's Emergency Mortgage Assistance Fund had not yet been created. We do not think that the existence of this Fund would change the result in *Abreen* even though the Fund has received substantial financial assistance in the past from appropriations made by the General Assembly.

can own real and personal property in its own name, raise revenue by issuing bonds and notes, and hold money in its own name. Clearly, a judgment entered against PHFA would not have to be paid out of state funds. Thus, the "most important factor in the determination of Eleventh Amendment immunity," *Blake v. Kline, supra,* 612 F.2d at 723, goes against the defendant.

### D. Whether PHFA is performing a governmental or proprietary function.

The distinction between a governmental function and a proprietary one is difficult to draw. *See Owen v. City of Independence,* 445 U.S. 622, 644 n. 26, 100 S.Ct. 1398, 1412 n. 26, 63 L.Ed.2d 673, 689 n. 26 (1980). Financing the construction and rehabilitation of homes and rental housing would traditionally be considered a role played by private entities, and hence a proprietary function, but " 'views as to what constitutes a public use necessarily vary with changing conceptions of the scope and functions of government, so that today there are familiar examples of such use which formerly would not have been so considered.' " *Johnson v. Pennsylvania Housing Finance Agency, supra,* 453 Pa. at 337, 309 A.2d at 533 (quoting *Dornan v. Philadelphia Housing Authority,* 331 Pa. 209, 222, 200 A. 834, 841 (1938)). PHFA limits itself to providing financing for housing for low and moderate income persons, and does not compete generally with private entities in the construction and mortgage markets. Accordingly, PHFA retains elements of sovereignty in performing a governmental function of attempting to promote the health, safety and welfare of the Commonwealth's poorer citizens. *See* 35 P.S. § 1680.506a.

### E. Whether PHFA's property is immune from state taxation.

In relevant part, 35 P.S. § 1680.506a provides as follows:

> The Commonwealth covenants with the purchasers and all subsequent holders and transferees of the notes and bonds issued by the agency, in consideration of the acceptance of any payment for the notes and bonds, that the notes and bonds of the agency, issued pursuant to this act and the income therefrom, the income and revenues of the agency, and the agency and its property shall at all times be free from taxation or assessment of every kind and nature except for inheritance, estate, gift and transfer taxes.

This immunity from taxation is not shared by other entities in the housing and rental markets and has obviously been provided to PHFA by the Commonwealth to aid the former in pursuing its governmental function.

### F. Whether the sovereign has immunized itself from responsibility for PHFA's operations.

As noted previously, 35 P.S. § 1680.502a provides that the general obligations of the agency shall not be deemed a debt of the Commonwealth or of its political subdivisions, or a pledge of the faith and credit of the Commonwealth or of its political subdivisions. In light of the other statutory provisions establishing PHFA's corporate autonomy, this section indicates the Commonwealth's intention to immunize itself from PHFA's operations.

### G. Conclusion

Undoubtedly, almost every case dealing with Eleventh Amendment immunity for state agencies will contain mixed statutory

---

The fund is maintained in an account separate from other monies kept by PHFA. 35 P.S. § 1680.408c. Additionally, any repayments to the Fund from mortgagors assisted under the program must be lapsed into or transferred back to the source from which the monies were appropriated unless prevented by any other state statute. *Id.* These provisions sufficiently insulate any money from the state treasury from being used to satisfy a judgment against PHFA. Since PHFA also has both the power and the resources to satisfy any judgment entered against it in this action, its administration of this state-funded account has no affect upon its independence from the Commonwealth. *See Gordenstein v. University of Delaware,* 381 F.Supp. 718 (D.Del.1974).

signals concerning that agency's independence. Some of the above factors indicate that PHFA should share in Pennsylvania's sovereignty. These include its performance of a governmental function, its exemption from state taxation, control of appointments to its membership by the governor, and the requirement that its bonds and notes be issued only with the written approval of the governor. They are countered by the following. First, PHFA clearly has corporate autonomy. It can sue and be sued, and hold property, including money, in its own name. Second, these same corporate powers indicate that, on the most important factor in the determination of Eleventh Amendment immunity, any judgment rendered against PHFA would not be paid out of the state treasury. Third, state courts have not conferred sovereign immunity upon PHFA. Finally, the state has immunized itself from liability arising from PHFA's operations.

Based upon the foregoing, we conclude that PHFA is not a part of the Commonwealth of Pennsylvania and, accordingly, cannot assert Eleventh Amendment immunity from suit in federal court. We turn now to the joint motion of Dunbar and Baum to dismiss plaintiff's complaint.

### III. Dunbar and Baum's Motion to Dismiss

■ Counts III and IV of the complaint assert state law claims against all the defendants. Specifically, plaintiff asserts in count III a violation of her state constitutional rights under Pa. Const., Art. I, §§ 1, 25, 26. In count IV she asserts a violation of her state due process rights under the same state constitutional provisions based upon a property right in her employment with PHFA.[3] Defendants

Dunbar and Baum, relying upon *Pennhurst State School & Hospital v. Halderman, supra,* assert that this court lacks jurisdiction under the Eleventh Amendment to hear these claims because they are state officials. It is true that the Supreme Court stated in *Pennhurst II* as follows:

[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment.

*Id.* —— U.S. at ——, 104 S.Ct. at 911, 79 L.Ed.2d at 82 (brackets added). The Court, however, further stated that "a federal suit against state officials on the basis of state law contravenes the Eleventh Amendment when . . . the relief sought and ordered has an impact directly on the State itself." *Id.* at ——, 104 S.Ct. at 917, 79 L.Ed.2d at 89. We have already concluded that PHFA is not a part of the Commonwealth for Eleventh Amendment purposes. Thus, the relief sought would not have an impact directly on the state. Accordingly, whether or not Dunbar and Baum are, or were state officials, *Pennhurst II* does not bar this action against the individual defendants.

■ Dunbar and Baum also object to count VI of the complaint. They assert that this breach of contract claim, arising from provisions in PHFA's employee manual, is not cognizable under 42 U.S.C. § 1983 because no federal rights are involved. Plaintiff, however, has not attempted to pursue this count under the Civil Rights Act of 1871. Rather, plaintiff simply asserts a state claim for breach of contract. Accordingly, in the absence of an Eleventh Amendment bar, we may in our discretion

---

**3.** We note that in both counts plaintiff seeks to enforce these rights pursuant to 42 U.S.C. §§ 1983 and 1988. (Complaint, ¶¶ 57, 65). An essential element of a federal civil rights claim is the deprivation of a right conferred by the federal constitution or federal law. *See Padgett v. Stein,* 406 F.Supp. 287 (M.D.Pa.1975) and cases cited therein. A state law violation is not sufficient. *Williams v. Treen,* 671 F.2d 892 (5th Cir.1982), *cert. denied,* 459 U.S. 1126, 103 S.Ct.

762, 74 L.Ed.2d 977 (1983). Thus, these state constitutional claims would only be enforceable if some type of action, analogous to a *Bivens*-type action, *see Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), was available under state law. Such a cause of action can be asserted under Pa. Const., Art. I, § 1. *See Harley v. Schuylkill County,* 476 F.Supp. 191 (E.D.Pa.1979).

exercise pendent jurisdiction over this state law claim. *See Ambromovage v. United Mine Workers,* 726 F.2d 972 (3d Cir.1984).

In count II of the complaint, plaintiff asserts a property right in her employment. She alleges that when she was discharged, her Fourteenth Amendment due process rights in that employment were violated. The individual defendants deny that plaintiff had a property right in her employment and, accordingly, the count should be dismissed. Plaintiff can and does rely upon state law to establish her property right. *See Klein v. Califano,* 586 F.2d 250 (3d Cir.1978). She cites *Appeal of Colban,* 58 Pa.Commw. 104, 427 A.2d 313 (1981), and *DeFrank v. Greene County,* 50 Pa. Commw. 30, 412 A.2d 663 (1981) which held that when an employee manual confers certain procedural rights upon a public employee before the employee can be discharged, the employee has been given a property right in his employment which cannot be eliminated without a hearing prior to discharge under the Local Agency Law, 2 Pa.C.S. § 551 *et seq.* Citing *Scott v. Philadelphia Parking Authority,* 402 Pa. 151, 166 A.2d 278 (1960), defendants deny that such a state law right exists here. In *Scott,* the Pennsylvania Supreme Court concluded that a public parking authority had no power to enter into a three year contract with an employee when that power had not been specifically conferred upon it by its enabling legislation. Hence, the employee could be discharged despite the contract. Defendants contend that we cannot rely upon the Commonwealth Court authority because we must accept the holding of *Scott* as the latest pronouncement of Pennsylvania's highest court on the issue of an employee's right to continued employment.

█ We reject defendants' contention. *Scott* did not deal with rights created by an employee manual. It simply decided that, absent statutory authority, an employee had no right to continued employment with a local agency.[4] Accordingly, we may con-

sider the pronouncements of the Commonwealth Court as an indication of how the Pennsylvania Supreme Court would rule, *see Mazzula v. Monarch Life Insurance Co.,* 487 F.Supp. 1299 (E.D.Pa.1980), and we conclude that the state's highest court would find, in the circumstances of *Colban* and *DeFrank,* a property right in "a form of guarantee of employment," *see Colban, supra,* 58 Pa.Commw. at 107, 427 A.2d at 314, as expressed by certain procedural rights conferred upon an employee before she can be discharged. *See Abraham v. Pekarski,* 537 F.Supp. 858 (E.D.Pa.1982), *aff'd,* 728 F.2d 167 (3d Cir.1984) (local ordinance created property right in employment when it provided that employee would not be discharged "without just cause").

We cannot conclude, however, on the pleadings before us now whether or not *Colban* and *DeFrank* would apply to the instant case. The provisions of the personnel manual are not before us. Count II could be based upon procedural safeguards set forth in the manual and we would have to examine these to determine if they would create a property interest under Pennsylvania law consisting of certain guarantees in connection with plaintiff's employment.

█ On the other hand, the claim in count II may not be based upon procedural safeguards. Paragraph 44 indicates that plaintiff may be claiming a property right in her employment merely because she had successfully completed her probationary period and had become a "permanent" employee. If this is the basis of her claim, she cannot prevail because permanent employment status, by itself, is not a property right. *See Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Amesbury v. Luzerne County Institution District, supra:* If plaintiff pursues count II, we will examine her claim of a property interest in her employment, upon appropri-

---

**4.** Later Commonwealth Court authority is thus in accord with *Scott. See Amesbury v. Luzerne*

*County Institution District,* 27 Pa.Comm. 418, 366 A.2d 631 (1976).

ate motion, when an adequate record exists.[5]

Defendants also briefed, but did not raise in their motion, a statute of limitations defense. Since they admit it has only been raised to preserve the issue and that the defense must be rejected in light of *Knoll v. Springfield Township School District*, 699 F.2d 137 (3d Cir.1982), and *Fitzgerald v. Larson*, 741 F.2d 32 (3d Cir.1984), we need not discuss it.

We will issue an appropriate order.

### ORDER

AND NOW, this 4th day of December, 1984, it is ordered that:

1. The motion of defendant, Pennsylvania Housing Finance Agency, to dismiss plaintiff's complaint against it be and is hereby denied.

2. The motion of defendants, Harold Dunbar and Trudy Baum, to dismiss counts II, III, IV and VI of plaintiff's complaint against them be and is hereby denied.

---

[5.] In Count II plaintiff also claims a Fifth Amendment violation. This claim must fail because the federal government is not involved in this action. *See Miller v. Indiana Hospital*, 562 F.Supp. 1259 (W.D.Pa.1983).

Plaintiff also seems to be asserting a direct cause of action under the Fourteenth Amendment. It is unclear whether such a cause of action exists, *see Miller v. Indiana Hospital, supra*, but we need not decide that issue because plaintiff's claim under Section 1983 provides her with substantially the same remedy. *Rogin v. Bensalem Township*, 616 F.2d 680 (3d Cir. 1980), *cert. denied*, 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981).

We also note that in resisting plaintiff's claim in Count II, defendants did not brief the issue of state action or involvement in the conduct leading to plaintiff's discharge because it would not have been consistent with PHFA's claim of Eleventh Amendment immunity. This element of plaintiff's claim can await further development of the record. It is not foreclosed by our disposition of the Eleventh Amendment issue and requires a different analysis. *See, e.g., Krynicky v. University of Pittsburgh*, 742 F.2d 94 (3d Cir. 1984).